**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

FILED
United States Court of Appeals
Tenth Circuit

**January 12, 2026**

Christopher M. Wolpert
Clerk of Court

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOEL RUIZ,

    Defendant - Appellant.

No. 24-2128

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:22-CR-00365-DHU-1)**

_____

Violet N. D. Edelman, Assistant Federal Public Defender, Office of Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Caitlin L. Dillon, Assistant United States Attorney (Ryan Ellison, United States Attorney, with her on the brief), Office of United States Attorney, District of New Mexico, Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **HARTZ**, **TYMKOVICH**, and **McHUGH**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

    Joel Ruiz was convicted of sexual abuse of a minor under twelve years old and sentenced to thirty years of imprisonment. He appeals his conviction based on three grounds: (1) his indictment should have been dismissed for vagueness; (2) the

government failed to establish his non-Indian status; and (3) the jury was improperly instructed with a modified *Allen* instruction.

Exercising jurisdiction under 28 U.S.C. § 1291, we **VACATE** the conviction and **REMAND**. We agree that the government failed to produce sufficient evidence to prove Ruiz's non-Indian status beyond a reasonable doubt. Because proof of a defendant's non-Indian status is an essential element of the convicted crime in this circuit, Ruiz's conviction fails. We do not reach Ruiz's other arguments.

## I.    Background[1]

A pair of cousins reported that Ruiz lured them into his trailer with candy and abused them by touching their genitals when Jane Doe 1 was six or seven years old, and when Jane Doe 2 was three or four years old. Based on his conduct, Ruiz was charged with two counts of engaging in a sexual act with a minor under the age of twelve within an aggregate seven-year period, in violation of 18 U.S.C. §§ 1152, 2241(c), and 2246(2)(D). The indictment alleged that the victims were Indian, and that Ruiz was a non-Indian.

The case proceeded to trial. To prove that Ruiz was a non-Indian, the government presented two witnesses who testified that they concluded Ruiz was a non-Indian based on their respective review of certain databases and relevant documents. At the conclusion of the government's case, Ruiz moved for judgment of

---

[1] We resolve this appeal based on the government's failure to produce sufficient evidence of Ruiz's non-Indian status, and thus we provide only the relevant facts and history as to that issue.

acquittal under Federal Rule of Criminal Procedure 29 for failure to prove his non-Indian status. The court denied the motion based on witness testimonies at trial.

Ultimately, Ruiz was found guilty of only one instance of engaging in a sexual act with a minor under the age of twelve. He was sentenced to thirty years of imprisonment, followed by ten years of supervised release.

## II.  Discussion

Ruiz contends that the evidence produced at trial proving his non-Indian status is insufficient as a matter of law.

"We review de novo the district court's denial of a motion for a judgment of acquittal." *United States v. Ramirez*, 348 F.3d 1175, 1180 (10th Cir. 2003) (citing *United States v. Bailey*, 327 F.3d 1131, 1140 (10th Cir. 2003)). "We view all the evidence in the light most favorable to the government" and "determine whether there is evidence from which a jury could find the defendant guilty beyond a reasonable doubt." *Id.* (citation modified). But we do not "weigh the evidence or consider the credibility of the witnesses in making our determination." *Id.* (citation modified).

If evidence of a defendant's non-Indian status is insufficient to sustain a conviction, a judgment of acquittal must be entered. *See* Fed. R. Crim. P. 29(a); *United States v. Simpkins*, 90 F.4th 1312, 1315 (10th Cir. 2024) ("[W]hen faced with a sufficiency challenge, a court asks only whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found *the essential elements of the crime* beyond a reasonable doubt." (citation modified)).

3

### A.     *Legal Standard: Proving Non-Indian Status*

"To convict [Ruiz] under § 1152, the government needed to prove, among other things, that (1) he is not an Indian and (2) his victims are Indians." *Simpkins*, 90 F.4th at 1315 (citation omitted).

"Although the statute does not define 'Indian,' we have held that persons qualify as Indians under § 1152" if: (1) they have "some Indian blood";[2] and (2) are "recognized as an Indian by a tribe or by the federal government." *Id.* at 1318 (citation modified).  Conversely, the government can prove that a person is a non-Indian by showing that he fails either prong.  *Id.* (citation omitted).

"Our cases applying this test have approved a totality-of-the-evidence approach to determining Indian status, although certain types of evidence, by themselves, may not be sufficient." *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012); *see United States v. Hatley*, 153 F.4th 1112, 1123–24 (10th Cir. 2025) (noting that a Certificate of Degree of Indian Blood or tribal documents that fall under an exception to the bar on hearsay may suffice).  A witness may testify about a victim or defendant's Indian or non-Indian status if he has personal knowledge of the matter.  *United States v. Walker*, 85 F.4th 973, 980–81 (10th Cir. 2023).

---

[2] An individual has "some Indian blood" if he has "Indian ancestors." *United States v. Hebert*, 159 F.4th 777, 780 (10th Cir. 2025) (citation omitted).  "Evidence of a parent, grandparent, or great-grandparent who is clearly identified as an Indian is generally sufficient to satisfy this prong." *Id.* (citation modified).

### B. Sufficiency of the Evidence

At Ruiz's trial, the government did not introduce any DNA or genealogical evidence as to his non-Indian blood. Although there is evidence that Ruiz was born in Mexico, evidence about a defendant's birthplace does not establish that he has no Indian ancestors. *Cf. Hebert*, 159 F.4th at 787 ("[A]lthough [defendant] identified as part-Mexican, white, and Latino/Hispanic, that also does not show he has no Indian ancestors.").

Instead, the government focused on proving that Ruiz is not recognized as an Indian by a tribe or the federal government. We have identified several nonexclusive factors in addressing this inquiry: "(1) enrollment in a tribe, (2) provision of government assistance reserved only for Indians, (3) enjoying the benefits of tribal affiliation, and (4) social recognition as an Indian through living on a reservation and participating in Indian social life." *Id.* at 780 (citation omitted). But as we explain, the testimonies of the government's two witnesses were insufficient to conclude Ruiz is a non-Indian beyond a reasonable doubt.[3]

---

[3] We recently clarified that when proving a defendant's Indian status, the government must prove that the defendant was an Indian "at the time of the offense." *Hatley*, 153 F.4th at 1123. We do not reach whether the government must similarly prove a defendant's non-Indian status at the time of the offense because our conclusion would be the same either way.

The government first called Jicarilla Apache criminal investigator Rome Wager[4] as a witness. Investigator Wager testified that he lived on the Jicarilla Apache Reservation for 27 years, and that he is an enrolled member of the tribe. He stated he was familiar with Ruiz from seeing him on the Jicarilla Apache Nation's reservation. R., Vol. V at 183–84. Investigator Wager also testified that Ruiz resided on the reservation. R., Vol. V at 185, 188, 195. When asked whether he reached out to any tribes to determine if federal jurisdiction exists, Investigator Wager said he contacted the Caddo Nation of Oklahoma (where the two minor victims are enrolled) to determine Ruiz's potential Indian status. Investigator Wager also testified that he reviewed the National Crime Information Center database and the Interstate Identification Index database, and learned that Ruiz was born in Mexico. Investigator Wager stated that he did not find any information that indicated Ruiz was an Indian. R., Vol. V at 194.

The government then called FBI Special Agent Piere Robert Himel.[5] Special Agent Himel testified that to confirm an individual is non-Indian, the individual is "ask[ed] whether they're enrolled members of a tribe." R., Vol. V at 375. He stated:

---

[4] Investigator Wager testified that he had been a criminal investigator since July 2021 and was previously a highway safety officer and a patrol officer. In total, he had been with the Jicarilla Apache Police Department for 13 years.

[5] Special Agent Himel testified that prior to joining the FBI, he was a police officer for the Bureau of Indian Affairs and served on the Standing Rock Reservation in North and South Dakota. Before that, he was a corrections officer with the Bureau of Indian Affairs on the Hopi Reservation. He testified that he was familiar with crimes in Indian Country and with relevant jurisdictional issues.

"we can query their name with various tribes, and if they're not on the enrollment records, they wouldn't be a member of that tribe." R., Vol. V at 375. He did not make clear whether he conducted this process for Ruiz, however. When questioned, Special Agent Himel testified that he concluded Ruiz is a non-Indian based on: (1) his review of documents that Ruiz signed under penalty of perjury, (2) his review of Ruiz's "identifiers" and photographs, and (3) in part, the fact that Ruiz's birthplace was Mexico. [R., Vol. V at 385–86, 390, 392.] Ruiz's documents did not affirmatively indicate his tribal status.

To begin, the witnesses' relationship and personal knowledge of Ruiz rest on a "thin foundation." *Hebert*, 159 F.4th at 787. Investigator Wager testified that he was familiar with Ruiz based on his experience passing "Ruiz on the road" in the community, but conceded that he "never stopped him." R., Vol. V at 183–84. He also indicated that he could identify Ruiz's specific vehicle and testified that he saw Ruiz's vehicle at a residence on the reservation, and thus concluded that Ruiz lived there. But seeing Ruiz's vehicle at a specific address, or evidence that Ruiz lived on the reservation, does not mean Ruiz is or is not affiliated or socially recognized as an Indian. Importantly, neither witness testified that they knew Ruiz personally, or that they knew that Ruiz was a non-Indian. *See Hebert*, 159 F.4th at 788 (finding the witness's "equivocal testimony and the scant evidence about their relationship does not support a reasonable inference that [the witness] actually knew [defendant's] Indian status"). Nor did they testify that Ruiz ever mentioned that he was a

7

non-Indian. And there is no showing that the government attempted to contact a family member to gather Ruiz's ancestry or recognition evidence. *Id.* at 789.

Second, Investigator Wager testified that he contacted only one tribe to check Ruiz's potential enrollment status. Special Agent Himel did not indicate that he contacted any tribes. Although we have stated that the government does not have a duty "to bring forth tribal officials to *disprove* [an individual] was a member of their tribes," *Diaz*, 679 F.3d at 1188, we have also recently held that "merely contacting five tribes without results proved nothing" about a defendant's non-Indian status. *Hebert*, 159 F.4th at 789 & n.10. Here, only contacting the tribe that the minor victims were enrolled in fails to provide sufficient evidence to prove Ruiz's non-Indian status.

Third, Investigator Wager concluded that Ruiz was a non-Indian based on his review of national databases that did not indicate otherwise. But as Special Agent Himel noted in his testimony, law enforcement databases do not have information on whether an individual is an enrolled member of a tribe. R., Vol. V at 375 ("[T]hey may on occasion, but, generally, [Indian status is] something you have to ask the individual about and then follow-up with the local enrollment office. . . . If we don't find anything, they wouldn't be considered a member of a federally-recognized tribe."). Accordingly, Investigator Wager's conclusion that Ruiz is a non-Indian based on his review of such databases, or any adjacent archive for that matter, falls short of proving this essential element.

Finally, both witnesses concluded Ruiz was a non-Indian at least partly because Ruiz was born in Mexico. But as we established in *Hebert*, "[t]he definition of a recognized Indian . . . —tribal or federal government recognition—does not turn on race." 159 F.4th at 789 ("And even if relevant, the race evidence tells little because . . . someone can be both Hispanic and Native American.").

In short, even in the light most favorable to the government, a rational jury would need to speculate to conclude that Ruiz is a non-Indian based on the evidence the government provided. The witnesses' respective experience working with and in tribal communities, although extensive, cannot prove Ruiz's non-Indian status when their conclusions are likewise predicated on mere inferences.

Hence, we must vacate Ruiz's conviction and remand because the government failed to set forth sufficient evidence to prove, beyond a reasonable doubt, a defendant's non-Indian status under 18 U.S.C. § 1152.

### C. *Proving a Defendant's Non-Indian Status in the Tenth Circuit*

We acknowledge that in reaching this conclusion, the government has a difficult and potentially impractical task "to prove a negative." *Hebert*, 159 F.4th at 786 (citations omitted). That is especially so when the government must do so beyond a reasonable doubt and "when the information is more likely in possession of the defendant." *Id.* (citations omitted).

Our current caselaw originates from *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001), where our circuit concluded that the Indian and non-Indian statuses of a victim and defendant are essential elements of a crime under § 1152 that must be

9

alleged in an indictment. In recognizing that § 1152 "does not expressly allocate the burden of alleging and proving the statuses of the victim and the defendant," our circuit, a bit amorphously, concluded that because the status of a victim is an essential element, the status of a defendant must be also. *Prentiss*, 256 F.3d at 975–78 ("[W]e are not persuaded that the status of the defendant should be treated differently from the status of the victim . . . [because] the status of the defendant may be just as significant in determining whether a federal court has jurisdiction . . . .").

But an alternative interpretation—that proof of defendant's non-Indian status should be an affirmative defense—resolves the pickle, and more. First, it's logical. It is nonsensical to have convictions vacated and overturned because, despite putting forth convincing evidence of a defendant's offense conduct, the government did not have ample evidence in its arsenal "to prove a negative." Our rule, perversely, turns the table on victims when the defendant most likely holds the evidence that proves his status. *See United States v. Hester,* 719 F.2d 1041, 1043 (9th Cir. 1983) ("It is far more manageable for the defendant to shoulder the burden of producing evidence that he is a member of a federally recognized tribe than it is for the [g]overnment to produce evidence that he is not a member of any one of the hundreds of such tribes.").

The resolution is further supported by the text of 18 U.S.C. § 1152, also known as the Indian Country Crimes Act or the General Crimes Act.[6] The provision enables the government to prosecute crimes committed in Indian country by non-Indians against Indians. It lists three exceptions, however, one of which is that broad coverage does "not extend to offenses committed by one Indian against the person or property of another Indian." § 1152. Relatedly, the Supreme Court has directed lower courts that

> an indictment . . . founded on a general provision defining the elements of an offense, or of a right conferred, *need not negative the matter of an exception* made by a proviso . . . , whether in the same section or elsewhere, and that *it is incumbent on one who relies on such an exception to set it up and establish it*."

*McKelvey v. United States*, 260 U.S. 353, 357 (1922) (emphases added) (citations omitted); *see also Cunningham v. Cornell University*, 604 U.S. 693, 707 (2025) (noting in a civil case that "even in the criminal context, it remains a settled rule that

---

[6] 18 U.S.C. § 1152 provides:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

an indictment or other pleading . . . need not negative the matter of an exception made by a proviso or other distinct clause" (citation modified)).  Thus, a natural interpretation is that, like affirmative defenses, the enumerated exception should be raised first by the defendant; the government would then be required to provide any evidence proving otherwise.[7]

Indeed, even at the time *Prentiss* was decided, the Ninth Circuit had already determined that a defendant's non-Indian status is an affirmative defense that the defendant must first properly raise.  *Hester,* 719 F.2d at 1043 (holding "the [g]overnment need not allege the non-Indian status of the defendant in an indictment under section 1152, nor does it have the burden of going forward on that issue. Once the defendant properly raises the issue of his Indian status, then the ultimate burden of proof remains, of course, upon the [g]overnment" (citation omitted)).  Circuits that have addressed the same question have followed *Hester*'s reasoning.  *See Haggerty*, 997 F.3d at 300–02 (discussing the circuit split between the Ninth and Tenth Circuits, and concluding that "settled and reconcilable Supreme Court doctrine, as well as principles of statutory construction, demonstrate that, when the victim is Indian, the defendant's status as Indian is an affirmative defense for which the defendant bears the burden of pleading and production, with the ultimate burden of proof remaining

---

[7] "If . . . the exceptions are essential elements, then the [g]overnment must also allege and affirmatively prove—every time it prosecutes a crime under § 1152—that the defendant has not already been punished by the local law of the tribe and that there is no treaty stipulation that grants exclusive jurisdiction to the respective tribe." *United States v. Haggerty*, 997 F.3d 292, 301 (5th Cir. 2021).

with the [g]overnment"); *cf. United States v. Webster*, 797 F.3d 531, 536 (8th Cir. 2015) (concluding that one of the enumerated exceptions, "the absence of tribal prosecution[,] is not an element of § 1152" because, applying the same reasoning in *Hester*, "[i]t is far more manageable for [a defendant] to initially show he was 'punished by the local law of the tribe' than it is for the government to initially show the negative" (citation omitted)).

Finally, experts and academics have also acknowledged the difficulty of our current standard.[8] The authors of the foremost treatise on Federal Indian Law note that "[p]erhaps because of the evidentiary difficulty in proving a negative, even in the Tenth Circuit where non-Indian status is treated an element of the offense that must be proven at trial, the courts have given prosecutors substantial latitude in establishing non-Indian status." 1 Cohen's Handbook of Federal Indian Law § 11.02[1][b][iii] (2025) ("In a nation with well over 570 federally recognized Indian tribal nations, . . . it would be difficult to require the government to prove that the defendant is not a member of any of them, absent some evidence that the question is contested by the defendant."). Indeed, and as evidenced by Ruiz's trial, our circuit has allowed testimony of personal knowledge that the defendant was a non-Indian to

---

[8] The *American Indian Law in a Nutshell*, a comprehensive resource on the federal law of American Indians, cognizes the circuit split. William C. Canby, Jr., *American Indian Law in a Nutshell* 195 (Jesse E. Chopper et al. eds., 8th ed. 2025) ("Circuits have split on the question whether the Indian or non-Indian status of the *defendant* must be pleaded and proved by the government in a prosecution under 18 U.S.C.A. § 1152."). Notably, the author of the guide is Judge William Canby, Jr., the author of *United States v. Hester* in the Ninth Circuit.

be admitted if there is adequate foundation. *Walker*, 85 F.4th at 983–84 ("The personal knowledge standard is not difficult to meet." (citation modified)). But this workaround misses the forest for the trees.

As unrealistic as our current standard for proving a defendant's non-Indian status may seem, we must abide by our existing precedent unless and until we revisit our decision in *Prentiss*. We join our colleague in encouraging this court to reexamine and correct our current caselaw on the issue. *See Hebert*, 159 F.4th at 790–92. (Hartz, J., concurring) ("I write separately only to urge this court to reconsider its view, stated in the en banc decision in *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001), that the non-Indian status of the defendant is an element of the offense charged under 18 U.S.C. § 1152.").

## III.  Conclusion

For the foregoing reasons, we vacate Ruiz's conviction and remand for further proceedings.