IN THE

# United States Court of Appeals

FOR THE TENTH CIRCUIT

---

**UNITED STATES OF AMERICA**

**v.**

**JOEL RUIZ**

NO. 24-2128
(D.C. NO. 1:22-CR-00365-DHU)
(D. N.M.)

**UNITED STATES OF AMERICA**

**v.**

**DENNIS HEBERT**

NO. 24-7030
(D.C. NO. 6:22-CR-00106-RAW)
(E.D. OKLA.)

## UNITED STATES' SUPPLEMENTAL BRIEF EN BANC

---

June 2026


TODD BLANCHE
*Acting Attorney General*

RYAN ELLISON
*First Assistant U.S. Attorney*
*District of New Mexico*

CHRISTOPHER J. WILSON
*U.S. Attorney*
*Eastern District of Oklahoma*

C. PAIGE MESSEC
CAITLIN L. DILLON
*Assistant U.S. Attorneys*
201 3rd St. NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274

LINDA A. EPPERLEY
*Assistant U.S. Attorney*
520 Denison Avenue
Muskogee, Oklahoma 74401
(918) 684-5100

## TABLE OF CONTENTS

**PAGE**


TABLE OF CASES AND OTHER AUTHORITIES .......... ii

STATEMENT OF THE CASE .......... 1

SUMMARY OF THE ARGUMENT .......... 3

ARGUMENT .......... 6

I. A defendant's Indian status is an affirmative defense under Section 1152. .......... 6

A. Statutory exceptions generally create affirmative defenses .......... 6

B. A defendant's peculiar knowledge of his own Indian status supports construing that fact as an affirmative defense. .......... 10

C. The Indian canon of statutory interpretation supports construing Indian status as an affirmative defense. .......... 13

D. *Famous Smith v. United States* does not require the contrary interpretation. .......... 16

II. Under the rule regarding provisos and established common-law principles, the proponent of an affirmative defense bears the burdens of production *and* persuasion. .......... 19

III. If the Court holds that a defendant's Indian status is an affirmative defense, it should remand to the district court to allow Ruiz and Hebert to file new-trial motions. .......... 26

CONCLUSION .......... 28

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION .......... 30

## TABLE OF CASES AND OTHER AUTHORITIES

## TABLE OF CASES

**PAGE**

Cases


*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) .......... 4, 7, 8, 21

*Davis v. United States*,
160 U.S. 469 (1895) .......... 20, 24

*Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*,
512 U.S. 267 (1994) .......... 3

*Dixon v. United States*,
548 U.S. 1 (2006) .......... 4, 5, 7, 10, 19, 20, 21, 22, 23, 24, 25, 27

*Famous Smith v. United States*,
151 U.S. 50 (1894) .......... 16, 17, 18, 19

*Leland v. State of Or.*,
343 U.S. 790 (1952) .......... 20

*Lucas v. United States*,
163 U.S. 612 (1896) .......... 18

*Martin v. Ohio*,
480 U.S. 228 (1987) .......... 21

*Mathews v. United States*,
485 U.S. 58 (1988) .......... 28

*McKelvey v. United States*,
260 U.S. 353 (1922) .......... 4-9, 21, 22

*Oklahoma v. Castro-Huerta*,
597 U.S. 629 (2022) .......... 13

*Oliphant v. Suquamish Indian Tribe*,
435 U.S. 191 (1978) .......... 15

*Oneida County v. Oneida Indian Nation*,
470 U.S. 226 (1985) .......... 13

*Patterson v. New York*,
432 U.S. 197 (1977) .......... 20, 21

*Ramah Navajo Chapter v. Lujan*,
112 F.3d 1455 (10th Cir. 1997) .......... 4, 13

*Selma, R. & D.R. Co. v. United States*,
139 U.S. 560 (1891) .......... 10

*Smith v. United States*,
568 U.S. 106 (2013) .......... 5, 11, 19, 21, 23, 24, 25

*Torres v. Lynch*,
578 U.S. 452 (2016) .......... 25

*United States v. Cook*,
84 U.S. 168 (1872) .......... 6, 7, 8

*United States v. Cowboy*,
694 F.2d 1228 (10th Cir. 1982) .......... 15

*United States v. Dickson*,
40 U.S. 141 (1841) .......... 7

*United States v. Gallaher*,
624 F.3d 934 (9th Cir. 2010) .......... 14

*United States v. Guess*,
629 F.2d 573 (9th Cir. 1980) .......... 24

*United States v. Haggerty*,
997 F.3d 292 (5th Cir. 2021) .......... 7, 8, 10, 23, 25, 26

*United States v. Hebert*,
159 F.4th 777 (10th Cir. 2025) .......... 1, 2, 3, 8, 11, 12, 14, 28

*United States v. Hester*,
719 F.2d 1041 (9th Cir. 1983) .......... 8, 12, 23, 24

*United States v. Kagama*,
118 U.S. 375 (1886) .......... 13

*United States v. McBratney*,
104 U.S. 621 (1881) ........................................................................ 9, 10

*United States v. Prentiss*,
256 F.3d 971 (10th Cir. 2001) .................................... 3, 6, 9, 18, 19, 26, 27, 28

*United States v. Reza-Ramos*,
816 F.3d 1110 (9th Cir. 2016) ...................................................................... 10

*United States v. Romero*,
136 F.3d 1268 (10th Cir. 1998) .................................................................... 15

*United States v. Ruiz*,
164 F.4th 1223 (10th Cir. 2026) ................................................... 1, 2, 3, 8, 12

*United States v. Thompson*,
— F.4th —, 2026 WL 1378801 (10th Cir. 2026) ........................................... 11

*United States v. Unser*,
165 F.3d 755 (10th Cir. 1999) .......................................................... 11, 23, 27

*United States v. Webster*,
797 F.3d 531 (8th Cir. 2015) .......................................................................... 8

## TABLE OF AUTHORITIES

**PAGE**

Statutes

18 U.S.C. § 1152 ........ 1, 3–12, 14–16, 18, 19, 25, 26, 28

18 U.S.C. § 1962(d) ........ 23

18 U.S.C. § 2145 ........ 17

18 U.S.C. § 2146 ........ 17

18 U.S.C. § 2241(c) ........ 1

18 U.S.C. § 2246(2) ........ 1

21 U.S.C. § 846 ........ 23

25 U.S.C. § 1304 ........ 16

Rules

Fed. R. Crim. P. 52(a) ........ 27

Other Authorities

1 Cohen's Handbook of Federal Indian Law § 11.02[1][b][iii], (Nell Jessup Newton & Kevin K. Washburn, eds., 2024) ........ 12

## STATEMENT OF THE CASE

In the proceedings below, Joel Ruiz and Dennis Hebert were each convicted at trial of sexually abusing a child in Indian Country. Ruiz used candy to lure a six- or seven-year-old girl into his trailer on the Jicarilla Apache reservation in New Mexico and molest her. *United States v. Ruiz*, 164 F.4th 1223, 1225 (10th Cir. 2026). Hebert sexually assaulted a six-year-old boy while a guest in his stepdaughter's house on the Choctaw Nation reservation in the Eastern District of Oklahoma. *United States v. Hebert*, 159 F.4th 777, 781 (10th Cir. 2025). Both men were charged and tried in their respective federal districts with aggravated sexual abuse in Indian Country under 18 U.S.C. §§ 1152, 2241(c), and 2246(2). Both indictments alleged that the victims were Indian and that the defendants were not. *Ruiz*, 164 F.4th at 1225; *Hebert*, 159 F.4th at 781. Neither Ruiz nor Hebert offered any evidence at trial that he was Indian.

On appeal, Ruiz and Hebert each contended that their convictions must be reversed because the government had not proven beyond a reasonable doubt that they were not Indian—and thus had not proven that their cases did not fall within the "intra-Indian" exception to Section 1152, the statute that extends federal enclave law to crimes committed in Indian Country.[1]

[1] Section 1152 provides, in full:

Each raised two additional issues on appeal, which were briefed in full before their respective panels.[2]

Both panels agreed with the defendants that the trial evidence was insufficient to prove beyond a reasonable doubt that they were not Indian. *Ruiz*, 164 F.4th at 1226–28; *Hebert*, 159 F.4th at 786–90. The panels acknowledged the challenge of the prosecution proving a negative beyond a reasonable doubt when the best evidence of the defendant's Indian status was most likely in his own possession. *Ruiz*, 164 F.4th at 1228; *Hebert*, 159 F.4th at 786. *See also Hebert*, 159 F.4th at 790–92 (Hartz, J., concurring). Nevertheless, the panels were bound to impose that burden on the

---

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

[2] Ruiz's other arguments were (1) that "his indictment should have been dismissed for vagueness," and (2) that "the jury was improperly instructed with a modified *Allen* instruction." *Ruiz*, 164 F.4th at 1225. Hebert's other arguments were (1) that "the district court plainly erred by failing to instruct the jury on what it means to be a non-Indian," and (2) that "the court also plainly erred by allowing the prosecution to elicit testimony and make arguments that penalized him for remaining silent about his Indian status." *Hebert*, 159 F.4th at 783.

government under *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001) (en banc). Having found that the convictions must be reversed, neither panel reached the defendants' remaining issues. *Ruiz*, 164 F.4th at 1225; *Hebert*, 159 F.4th at 783.

In both cases, the government requested rehearing en banc to allow the full Court to consider whether *Prentiss* correctly placed the burden of proving a defendant's non-Indian status on the prosecution. The Court granted both petitions and consolidated these matters for briefing.

## SUMMARY OF THE ARGUMENT

Applying established canons of construction to Section 1152's text and structure compels the conclusion that in a case with an Indian victim, the defendant's Indian status is an affirmative defense on which he carries the entire burden.[3]

1. Several well-settled principles reveal that a defendant's Indian status is an affirmative defense. First is the rule that exceptions or provisos to a statute are defenses that the party seeking to rely on must "set [] up" and

[3] The Supreme Court has described the burden of production as "a party's obligation to come forward with evidence to support its claim," and the burden of persuasion as "the notion that if the evidence is evenly balanced, the party that bears the burden of persuasion must lose," *Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267, 272 (1994). For many years, courts did not reliably distinguish between the two, often using the term "burden of proof" to refer to the burden of persuasion, but sometimes to the burden of production. *Id.*

"establish." *McKelvey v. United States,* 260 U.S. 353, 357 (1922). The Supreme Court has consistently applied this rule apart from "narrow[]" situations such as when the statutory exception is inseparable from the substantive elements. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 707 (2025). Under a straightforward application of *McKelvey*, a defendant's Indian status is an exception for the defendant to establish. And Section 1152 is not the rare sort of statute that avoids *McKelvey*'s rule, as its substantive elements (which extend federal criminal enclave laws to Indian Country) are contained within the statute's first paragraph, and are complete and logical without referencing the intra-Indian exception set forth in the statute's second, separate paragraph.

Second, as a general rule, "where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." *Dixon v. United States,* 548 U.S. 1, 9 (2006) (quotation omitted). A defendant's Indian status, involving personal matters of tribal recognition and family history, is such an area. It is therefore likely that Congress intended that, at a minimum, a defendant's own Indian status operate as an affirmative defense under Section 1152.

Third, under the Indian canon of construction, ambiguous provisions in federal statutes are to be construed in favor of the tribes. *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1461 (10th Cir. 1997). Here, recognizing a

defendant's Indian status as an affirmative defense in cases involving Indian victims is the construction that favors tribal interests. That construction best protects Indian victims and promotes community safety in Indian Country, and it does so while respecting tribal sovereignty. Section 1152 shows respect for tribal sovereignty by preventing federal prosecution of intra-Indian crimes, an interest that is adequately protected by requiring a defendant—who has the best access to the evidence—to establish his own Indian status. Preventing federal prosecution of cases where the defendant is likely, but not beyond-a-reasonable-doubt non-Indian (like Ruiz and Hebert), does not protect tribal sovereignty because the tribes cannot prosecute these likely-non-Indian offenders either.

2. If the Court concludes that a defendant's Indian status is an affirmative defense, then it should also conclude that the defendant carries both the burden of production and the burden of persuasion on that defense. That position accords with the Supreme Court's characterization of the *McKelvey* rule as putting *both* burdens on the proponent of the defense, *Dixon*, 548 U.S. at 13, as well as with the common-law rule that likewise placed both burdens on a defendant, *id*. at 8; *Smith v. United States*, 568 U.S. 106, 112 (2013). Because Congress has not spoken directly to the burden of persuasion on that affirmative defense, courts are to assume that it intended the common-law rule to apply.

3. If the Court holds that a defendant's Indian status is an affirmative defense, it should enter limited remands so that the district courts may assess whether Ruiz and Hebert can proffer enough evidence to permit a jury to conclude that they are Indian. If not, they will not have suffered any cognizable prejudice from the reversal of *Prentiss* and should not be entitled to new trials.

## ARGUMENT

### I. A defendant's Indian status is an affirmative defense under Section 1152.

#### A. Statutory exceptions generally create affirmative defenses.

Under "the Supreme Court's established guidepost for distinguishing criminal statutory elements from exceptions," *Prentiss*, 256 F.3d at 988 (Baldock, J., dissenting), a crime committed by one Indian against another Indian constitutes an exception" to Section 1152; therefore, a defendant's Indian status is an affirmative defense in a Section 1152 prosecution involving an Indian victim. The Court has long recognized that where a statute employs a "proviso" or "exception" to criminal liability, the indictment need not negate that exception. *McKelvey v. United States*, 260 U.S. 353, 357 (1922). In that instance, the rule is that "the matter contained in the exception is matter of defence and must be shown by the accused," *United States v. Cook,* 84 U.S. 168, 173–74 (1872); *McKelvey*, 260 U.S. at 357 ("[I]t is

incumbent on one who relies on such an exception to set it up and establish it."). The idea that Congress intends for statutory exceptions to be strictly construed and classified as affirmative defenses is "the general rule of law, which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes." *United States v. Dickson*, 40 U.S. 141, 165 (1841); *see also Dixon v. United States,* 548 U.S. 1, 13 (2006).

The Court has recently reaffirmed this longstanding principle. In *Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025), the Court reiterated that exceptions to a statute "ordinarily constitute affirmative defenses that are entirely the responsibility of the party raising them." As the Court explained, the rule applies unless the exception "is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted." *Id.* at 706 (quoting *Cook,* 84 U.S. at 173). Only in "narrow[]" situations has the Court has found an exception to be "so incorporated" as to avoid the rule, "such as when an exception to a criminal offense is contained within the same sentence of the provision defining the offense." *Id*. at 707.

"Section 1152 appears to be the exact type of statute contemplated by the Supreme Court" in *McKelvey*, because it contains "an exception made by a proviso or other distinct clause." *United States v. Haggerty*, 997 F.3d 292, 300

(5th Cir. 2021) (quoting *McKelvey*).[4] The statute's first paragraph sets forth the rule that federal criminal laws governing "offenses committed in any place within the sole and exclusive jurisdiction of the United States…shall extend to the Indian country." 18 U.S.C. § 1152. It is an "accurate[] and clear[]" definition that establishes a perfectly intelligible general rule "without providing an intra-Indian exception." *Haggerty*, 997 F.3d at 300 (quoting *Cook*, 84 U.S. at 173). A second, separate paragraph then carves out three exceptions: "offenses committed by one Indian against the person or property of another Indian"; offenses committed by an Indian "who has been punished by the local law of the tribe"; and offenses over which a tribe has, by treaty, been given exclusive jurisdiction. *Id.* Under a straightforward application of *Cook*, *McKelvey*, and *Cunningham*, the government need not "negate" these exceptions; rather, it is incumbent on the defendant to "set [] up and establish" them, *McKelvey*, 260 U.S. at 357.[5]

---

[4] *See also United States v. Hester*, 719 F.2d 1041, 1042 (9th Cir. 1983) (applying this rule of construction to a defendant's Indian status); *Hebert*, 159 F.4th at 790–91 (Hartz, J., concurring) (same); *Ruiz*, 164 F.4th at 1229–30 (same); *United States v. Webster*, 797 F.3d 531, 536 (8th Cir. 2015) (applying same to tribal punishment exception).

[5] If these exceptions were not affirmative defenses, then every time the government charges an offense under Section 1152, it would be required to establish that the defendant is *not* a member of any one of hundreds of tribes, that he has *not* been punished by the local laws of the tribe, and that *no* existing treaty confers exclusive jurisdiction on the tribes.

In Hebert's response to the government's petition for rehearing, he objected that applying the *McKelvey* proviso rule to Section 1152's exceptions would "run afoul of the Supreme Court's decision in *United States v. McBratney*, which held federal courts lacked jurisdiction over an offense committed by one non-Indian against another non-Indian in Indian country. 104 U.S. 621, 624 (1881)." Hebert Pet'n Resp. 9. Hebert reasons that if the government charged a crime against a non-Indian victim, *McKelvey* would put the burden on the defendant of proving the *McBratney* exception—that is, that the defendant is also non-Indian—an allocation that he believes would violate *McBratney*. *Id.* But there are at least two flaws in Hebert's reasoning.

First, *McBratney* neither presented nor addressed the question of burdens. There was no dispute that it involved a murder of a non-Indian by another non-Indian on the Ute Reservation. *McBratney*, 104 U.S. at 621. Second, *McBratney* was not a decision of statutory interpretation but rather was grounded in a theory of states' rights. 104 U.S. at 623–24; *see also Prentiss*, 256 F.3d at 989 (Baldock, J., dissenting) ("The Court in *McBratney* did not even purport to construe the applicable statute and its ruling finds no basis whatsoever in the language of § 1152 or its predecessor acts."). *McBratney* thus "does not bear on [the] interpretation of the text of § 1152 as

a matter of statutory construction." *Haggerty*, 997 F.3d at 298 n.7.[6] For these reasons, *McBratney* has no relevance to the question of allocating burdens under Section 1152.

Accordingly, in a crime in Indian Country against an Indian victim, a defendant's claim to be an Indian—thus invoking the intra-Indian exception—is an affirmative defense that the defendant must raise and establish.

### B. A defendant's peculiar knowledge of his own Indian status supports construing that fact as an affirmative defense.

In addition to the "proviso" canon, which would apply to each of Section 1152's statutory exceptions, another long-established doctrine suggests that, at a minimum, Congress intended a defendant's own Indian status to be an affirmative defense. The "general rule of evidence" holds "that the burden of proof lies on the person who wishes to support his case by a particular fact which lies more peculiarly within his knowledge[.]" *Selma, R. & D.R. Co. v. United States*, 139 U.S. 560, 568 (1891) (quotation omitted). *See also Dixon*, 548 U.S. at 9 (recognizing "the doctrine that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has

---

[6] The Ninth Circuit, for instance, has held both that a defendant's Indian status is an affirmative defense and that the *McBratney* exception is not, reasoning that the *McBratney* exception is "jurisdictional." *United States v. Reza-Ramos*, 816 F.3d 1110, 1120 (9th Cir. 2016). This case does not call upon the Court to determine whether that result or analysis is correct.

the burden of proving the issue." (quotation omitted)). "This pragmatic element is one which may properly be taken into account" in determining Congress's intent as to the allocation of the burden of proof. *United States v. Unser*, 165 F.3d 755, 765 (10th Cir. 1999). The inference of an affirmative defense is especially strong when failing to place the burden with the proponent of the defense would require the other party to prove a negative. *See Smith v. United States*, 568 U.S. 106, 113 (2013).

These principles suggest that Congress intended that when a defendant wishes to avail himself of Section 1152's intra-Indian exception, he must bear the burden of establishing that he is Indian. On the question of his own status, "the informational asymmetry heavily favors the defendant." *Smith* 568 U.S. at 112 (regarding withdrawal from a conspiracy). There are two components to being "Indian" under the statute: (1) some degree of Indian blood, and (2) tribal or federal recognition as an Indian. *Hebert*, 159 F.4th at 785. The facts relevant to both halves of the test are much more likely to be known to the defendant than the government.

As this Court has recently explained, there is no "comprehensive federal database of Indian genealogy or national registry of members of federally recognized Indian tribes." *United States v. Thompson*, — F.4th —, 2026 WL 1378801, at *7 n.12 (10th Cir. 2026). And "[i]n a nation with well over 570 federally recognized Indian tribal nations," "it would be difficult to

require the government to prove that the defendant is not a member of any of them[.]" *Cohen's Handbook* § 11.02[1][b][iii] (Nell Jessup Newton & Kevin K. Washburn, eds., 2024); *see also Hester,* 719 F.2d at 1043 (calling it "far more manageable" for the burden of adducing tribal membership to be placed upon the defendant). Similarly, it can be arduous or impossible for the government to establish that a defendant's ancestry contains *no* Indians. Sometimes such evidence is available through a defendant's close blood relatives, but often it is not. In those cases, as Judge Hartz asked, "who can the government find to establish that Defendant's complete family tree contains no Indian blood whatsoever and that he has no ties to a recognized tribe anywhere in this country?" *Hebert*, 159 F.4th at 790 (Hartz, J., concurring). "In contrast, if there were evidence of Defendant's Indian status, Defendant could easily point to it and do so without implicating in any way his culpability for the underlying crime." *Id.*

As Judge Tymkovich observed in *Ruiz*, it is "nonsensical" and "perverse[]" to vacate convictions under Section 1152 because the government "did not have ample evidence in its arsenal 'to prove a negative'" "when the defendant most likely holds the evidence that proves his status." 164 F.4th at 1229. In light of the well-settled rule assigning the burden of proof to the party with peculiar knowledge of a contested fact, the Court should hold that

a defendant's own Indian status—at least—is an affirmative defense under Section 1152.

### C. The Indian canon of statutory interpretation supports construing Indian status as an affirmative defense.

In addition to the general principles of construction that warrant treating Indian status as an affirmative defense, a special rule in cases involving tribal interests also warrants that reading.[7] In what has become known as the Indian canon of construction, courts recognize that "federal statutes are to be construed liberally in favor of Native Americans, with ambiguous provisions interpreted to their benefit." *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1461 (10th Cir. 1997). This canon, which grew out of disputes regarding treaty interpretation, is "rooted in the unique trust relationship between the United States and the Indians." *Id*. (quoting *Oneida County v. Oneida Indian Nation*, 470 U.S. 226, 247 (1985)). That trust relationship extends a "duty of protection" to the tribes, *United States v. Kagama*, 118 U.S. 375, 384 (1886), to include protecting the safety of Indians and their property, *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 651 (2022), as well as "[t]he right of tribal self-government," *Ramah Navajo Chapter*, 112 F.3d at 1462 (quotation omitted).

[7] The United States focuses on a defendant's Indian status because that is the question presented in these cases, but the arguments under this heading would generally apply to the other statutory exceptions as well.

Several tribal interests are implicated by the construction of Section 1152, the most prominent being the interest in obtaining justice for Indian victims, a related interest in community safety in Indian Country, and a sovereignty interest. Examining each of these, the interpretation of Section 1152 that best advances those tribal interests is one that recognizes a defendant's Indian status as an affirmative defense.

Beginning with the tribal interest in vindicating the rights of Indian victims, that interest is best served by erecting fewer barriers to federal prosecution—here, by recognizing that a defendant's Indian status is an affirmative defense. Proving a negative—particularly one within a defendant's particular knowledge—is difficult, sometimes impossibly so. *Hebert*, 159 F.4th at 786 & n.6. When the government cannot overcome those challenges, individuals who have inflicted grave harm on Indians will escape federal justice. Ruiz and Hebert's cases make that reality all too concrete.

Turning to the related tribal interest in community safety in Indian Country, that interest is served by having wrongdoers on the reservations held accountable for their crimes, an interest which is advanced by prosecutions under Section 1152. This is true whether the case involves an Indian victim or an Indian defendant. *Cf. United States v. Gallaher*, 624 F.3d 934, 941 (9th Cir. 2010) (recognizing that tribal interests will not always align with the interests of "individual Indian criminal defendants"). There

will be more successful federal prosecutions of crimes in Indian Country if the government is not required to prove beyond a reasonable doubt the defendant's non-Indian status—a fact having nothing to do with the defendant's culpability.

Finally, an affirmative-defense rule respects tribal sovereignty. To be sure, the intra-Indian exception is a "matter[] of central importance to tribal self-government," *United States v. Romero*, 136 F.3d 1268, 1269 n.2 (10th Cir. 1998), *abrogated on other grounds by Musacchio v. United States*, 577 U.S. 237 (2016), and Congress did not wish to exercise Section 1152 jurisdiction over such crimes. But allocating the burden of proving his own Indian status to the defendant does not undermine that intent. There is simply no reason to think that Indian defendants will fail to establish their statuses by a preponderance. An affirmative defense is thus sufficient protection against intra-Indian prosecutions. In contrast, putting the burden on the government would prevent successful federal prosecution of cases which *most likely* (but not *beyond a reasonable doubt*) involve a diversity of Indian status. Blocking federal prosecution of these cases does nothing to enhance tribal sovereignty because tribes typically[8] cannot prosecute these offenders *either*. *Oliphant v.*

---

[8] Recent laws, enacted long after Section 1152 and its predecessors, *see United States v. Cowboy*, 694 F.2d 1228, 1232 (10th Cir. 1982) (tracing the intra-Indian exception back to 1817), have created limited tribal jurisdiction

*Suquamish Indian Tribe*, 435 U.S. 191 (1978) (holding that tribes lack inherent authority to prosecute non-Indians). Section 1152 shows respect for tribal sovereignty by allowing exclusive tribal jurisdiction over intra-Indian matters. But in cases like Ruiz's and Hebert's, involving defendants who are most likely not Indian, tribal prosecution is not possible. Eliminating the possibility of federal prosecution in those cases does nothing to advance tribal sovereignty—and, as discussed above, actively harms other tribal interests.

### D. *Famous Smith v. United States* does not require the contrary interpretation.

In his response to the government's en banc petition, Hebert asserted that the Supreme Court held in *Famous Smith v. United States,* 151 U.S. 50 (1894),[9] that the non-Indian status of the *victim* is an element where the defendant is an Indian. From this, Hebert deduces that the non-Indian status of the *defendant* must be an element in a case with an Indian victim. Hebert Pet'n Resp. 7–8. Hebert's argument, however, rests on a misreading of *Famous Smith*.

---

over non-Indian offenders. *See* 25 U.S.C. § 1304 (enacted in 2013 and expanded in 2022).

[9] The United States Reports captions the case *Famous Smith v. United States*, whereas the Supreme Court Reporter uses simply *Smith v. United States*. The United States follows the U.S. Reports.

*Famous Smith* involved a prosecution for murder on the Cherokee Nation reservation brought under Section 1152's predecessors, Rev. St. §§ 2145 and 2146, which shared nearly identical language with the current statute. Neither party disputed that the defendant, Smith, was an Indian, 151 U.S. at 53; the government alleged in the indictment that his victim, Gentry, was not, *id*. at 50. But at trial, Smith introduced evidence that Gentry "claimed to be an Indian," "looked like one," had an Indian father, "was recognized as an Indian," and "participated in the payment of 'bread money' to the Cherokees." *Id*. at 54. The government's only evidence to the contrary was that Gentry had been denied permission to vote in a tribal election, but this was "explained by the fact that he had not resided in the district" long enough to be eligible to vote. *Id*.

Defending the conviction, the government argued that it was "necessary first to ascertain the presumption in the absence of evidence." 151 U.S. at 52. The Supreme Court, however, found no need to go that far. Instead, the Court merely had to determine what the evidence at trial showed: "This case," it began, "*so far as we have found it necessary to consider it*, raises but *a single question*, namely, whether, Smith being admitted to be a Cherokee Indian, born and raised in the Cherokee Nation, and a citizen of that nation, the undisputed testimony did not also show Gentry to have been an Indian." *Id*. at 53 (emphasis added).

On that point, the Court summarized the evidence of Gentry's status that had been presented at trial and then recounted certain relevant jury instructions from the trial. 151 U.S. at 54. The Court began by describing instructions that had "charged the jury" that, "in substance," "to give the court jurisdiction, it was necessary to charge in the indictment that Gentry was a white man and not an Indian." *Id.* The Court also noted instructions that had elaborated upon the circumstances under which "an Indian by blood" could abandon his Indian status. *Id.*

Next, and in language that *Prentiss* would later rely upon,[10] the Court described an instruction in which the district court had told the jury: "That Gentry was a white man, and not an Indian, was a fact which the government was bound to establish, and, if it failed to introduce any evidence upon that point, defendant was entitled to an instruction to that effect." 151 U.S. at 55. In the very next sentence, the Supreme Court wrote: "*Without expressing an opinion* as to the correctness of the legal proposition *embodied in this charge*, we think there was no testimony which authorized the court to submit to the jury the question whether Gentry was a white man, and not an

[10] *Prentiss* also relied upon *Lucas v. United States*, 163 U.S. 612 (1896), in concluding that a victim's status is an element under Section 1152. 256 F.3d at 975. But *Lucas* did not interpret either Section 1152 or its predecessor statutes; rather, the decision explicitly analyzed "the act of May 2, 1890." 163 U.S. at 614.

Indian." *Id.* (emphasis added). In other words, because the trial evidence had been so one-sided, there was no need for the Court to "express[] an opinion" as to whether the district court had been "correct[]" to instruct the jury that the government carried the burden of establishing Gentry's status. As *Prentiss* failed to appreciate, *Famous Smith* thus did not opine as to which party held the burden of establishing Gentry's status, and in fact expressly chose not to resolve that question.

## II. Under the rule regarding provisos and established common-law principles, the proponent of an affirmative defense bears the burdens of production *and* persuasion.

Accepting that a defendant's Indian status is an affirmative defense, the question remains what burden that affirmative defense imposes. *See Prentiss*, 256 F.3d at 975 n.2 (recognizing that "[a]n affirmative defense may impose various burdens on the defendant"). When Congress creates an affirmative defense through a statutory proviso, the burdens of production and persuasion stay together with the defendant. *Dixon*, 548 U.S. at 8. In addition, because Congress has not addressed the burden of persuasion under Section 1152, it is presumed to have intended to apply the common-law rule, under which a defendant asserting an affirmative defense bears both the burdens of production and persuasion. *Id.* at 13; *Smith*, 568 U.S. at 112. For both of these reasons, a defendant charged under Section 1152 in a case involving an Indian victim must bear the burden of producing evidence of his

Indian status and the ultimate burden of persuading the trier of fact that he is Indian.

The allocation of burdens under affirmative defenses has taken a winding road through the years. At common law, the proponent of an affirmative defense held both the burdens of production and persuasion. *See, e.g. Dixon*, 548 U.S. at 8–9. Courts generally applied this rule until the late nineteenth century. *Patterson v. New York*, 432 U.S. 197, 202 (1977) ("This was the rule when the Fifth Amendment was adopted, and it was the American rule when the Fourteenth Amendment was ratified.").

In 1895, the Supreme Court decided *Davis v. United States*, 160 U.S. 469 (1895), which held that the prosecution had the burden of persuasion on the affirmative defense of insanity. *Davis* had "wide impact on the practice in the federal courts with respect to the burden of proving various affirmative defenses," *Patterson*, 432 U.S. at 202, and "the prosecution in a majority of jurisdictions in this country sooner or later came to shoulder the burden of proving the sanity of the accused and of disproving the facts constituting other affirmative defenses," *id.* at 202–03. *Davis* did not, however, "overthr[o]w the old common-law rule," *Dixon*, 548 U.S. at 9, and the practice across the country never became uniform. Later decisions addressed various state affirmative defenses that put the burdens of production and persuasion on the defendant, *see, e.g.*, *Leland v. State of Or.*, 343 U.S. 790, 799 (1952);

*Patterson*, 432 U.S. at 205–06, with the Supreme Court coming to hold that the Constitution prohibits assigning the burden of persuasion to a defendant only when the affirmative defense "negate[s] an element of the crime." *Smith*, 568 U.S. at 110.

Over the last several decades, the Court has consistently recognized the common-law rule and its enduring relevance. *Patterson*, 432 U.S. at 202; *Martin v. Ohio*, 480 U.S. 228, 235–36 (1987); *Dixon*, 548 U.S. at 8; *Smith*, 568 U.S. at 112. And, pertinent to the present question, it has held that when Congress has not spoken to the burden of persuasion, it is presumed to have intended the common-law rule. *Dixon*, 548 U.S. at 13–14; *Smith*, 568 U.S. at 112. It has also explained that the *McKelvey* proviso rule keeps the burden of persuasion on the defendant when an affirmative defense is created by statutory exception. *Dixon*, 548 U.S. at 13; *see also Cunningham*, 604 U.S. at 701 (exceptions to a statute "ordinarily constitute 'affirmative defense[s]' that are '*entirely the responsibility* of the party raising' them") (emphasis added)).

*Dixon*, the Court's most thorough treatment of the burden of persuasion in a criminal case, is relevant to both points. There, the Court granted certiorari to resolve a circuit split as to whether the defendant or the government bears the burden of persuasion on the affirmative defense of duress. 548 U.S. at 4 & n.1. The defendant, who was charged with federal firearms offenses, conceded that the burden of production was hers to carry,

*id*. at 4, but she contended that the government bore the burden of disproving her duress beyond a reasonable doubt, *id*. at 5.

The Supreme Court disagreed. "[U]ntil the end of the 19th century," it explained, "common-law courts generally adhered to the rule that 'the proponent of an issue bears the burden of persuasion on the factual premises for applying the rule.'" *Dixon*, 548 U.S. at 8. This practice "accords with the general evidentiary rule that 'the burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party.'" *Id*. (quotation omitted). Although duress is itself a common-law defense, the Court noted that the same rule applies—that is, a defendant retains the burden of persuasion—when Congress "enact[s] an affirmative defense in the proviso of a statute." *Id.* at 13. For this, it cited *McKelvey*'s statement that "it is incumbent on one who relies on such an exception to set it up and establish it." *Id*. (quoting *McKelvey*, 260 U.S. at 357).

With those principles in mind, the Court's task was to "determine what that defense would look like as Congress 'may have contemplated' it." 548 U.S. at 13. It could "safely assume" that Congress "was familiar with both the long-established common-law rule and the rule applied in *McKelvey* and that it would have expected federal courts to apply a similar approach to any affirmative defense that might be asserted as a justification or excuse for violating the new law." *Id*. at 13–14 (footnote omitted). It thus concluded

that, "as will usually be the case, given the long-established common-law rule[,] we presume that Congress intended the petitioner to bear the burden...by a preponderance of the evidence." *Id.* at 17. *See also Smith*, 568 U.S. at 112 ("Because Congress did not address in 21 U.S.C. § 846 or 18 U.S.C. § 1962(d) the burden of proof for withdrawal, we presume that Congress intended to preserve the common-law rule.").[11]

It is true that *Hester* and *Haggerty* both suggest that the government carries the burden of persuasion as to the defendant's non-Indian status. *Hester*, 719 F.2d at 1043; *Haggerty*, 997 F.3d at 299. In neither case, however, was the burden of persuasion at issue, as neither defendant made any attempt to produce evidence that he was Indian. *Hester*, 719 F.2d at 1043 ("He does not contend that he is in fact an Indian, and raised no such issue at trial."); *Haggerty*, 997 F.3d at 302 ("Haggerty did not raise the issue of Indian status at trial as an affirmative defense[.]"). Both cases, in other words, were decided upon the burden of production alone. Neither decision, presumably

[11] A Tenth Circuit case decided before *Dixon* and *Smith* reached a similar result without considering common-law principles. In *Unser*, 165 F.3d at 764–65, the Court held that a defendant raising a necessity defense to a charge of unlawfully operating a motor vehicle in a wilderness area had both the burden of production, *id.* at 764, and of persuasion, reasoning that the defendant was "most likely to have access to the facts needed to prove such a defense" and that "requiring the government to disprove the necessity defense could impede enforcement of the regulatory scheme," *id.* at 765.

for the same reason, contains substantial analysis of the allocation of the burden of persuasion, each devoting just a single sentence to the matter.

In *Hester*, the Ninth Circuit simply said that "[o]nce the defendant properly raises the issue of his Indian status, then the ultimate burden of proof remains, of course, upon the Government." 719 F.2d at 1043. The sole authority cited for this proposition was *United States v. Guess,* 629 F.2d 573, 577 n.4 (9th Cir. 1980), but *Guess*—which, like *Hester* itself, predated *Dixon* and *Smith*—did not decide that issue. Instead, because it determined that the government would have satisfied the burden in any event, *Guess* chose not to decide which party carried the burden of persuasion. *Id*. at 577. In a footnote, *Guess* observed that "[t]he general rule is that once a criminal defendant satisfies his burden of production with respect to an affirmative defense, the prosecution must prove the inapplicability of this defense beyond a reasonable doubt," *id*. at n.4, for which it cited *Davis* and its progeny. But as discussed earlier, while *Davis* precipitated a change in the treatment of many affirmative defenses, it did not "overthr[o]w" the common-law rule. *Dixon*, 548 U.S. at 9. In any event, after *Guess* noted what it understood to be the general rule, it questioned whether that rule would apply to affirmative defenses that did not "negate culpability," *id.*, a class that would include a defendant's Indian status. *Guess* therefore provides no support for the notion

that the government should carry the burden of persuasion on that affirmative defense.

And in *Haggerty*, the Fifth Circuit said that "the Government retains the ultimate burden of persuasion because a defendant's Indian/non-Indian status, via the operation of Section 1152, affects the applicable scope of the relevant federal enclave law's jurisdictional situs element." 997 F.3d at 299, citing *Smith*, 568 U.S. at 110–11, and *Torres v. Lynch*, 578 U.S. 452, 467 (2016). The cited portion of *Smith* explains that the government is precluded from placing the burden of persuasion on a defendant only when the affirmative defense negates an element of the crime, 568 U.S. at 110, and the cited portion of *Torres* says that jurisdictional elements, like substantive elements, must be proven by the government beyond a reasonable doubt, 578 U.S. at 467. It appears that the Fifth Circuit took these cases to mean that any affirmative defense that "affects the applicable scope" of a jurisdictional element is effectively one that negates the element itself. But that conclusion does not follow.

All affirmative defenses narrow the range of situations otherwise covered by an offense's elements. One could say that a duress defense "affects the applicable scope" of a knowing or willful mens rea element—in that it narrows the class of knowing or willful conduct otherwise criminalized—but it does not *negate* that state of mind, *Dixon*, 548 U.S. at 7, and thus Congress

may assign the burden of persuasion to the defendant, *id*. In a Section 1152 prosecution, the "jurisdictional situs element" is the crime's commission in Indian Country. *See* 18 U.S.C. § 1152 (providing that federal enclave laws "shall extend to the Indian country"). That the crime was committed by an Indian against an Indian may limit the reach of that provision, but it in no way "negates" the fact that the crime occurred in Indian Country. *Haggerty*'s reasoning therefore does not preclude recognition that a defendant bears the burden of persuasion on the affirmative defense of his own Indian status.

## III. **If the Court holds that a defendant's Indian status is an affirmative defense, it should remand to the district court to allow Ruiz and Hebert to file new-trial motions.**

For the reasons just explained, the government urges this Court to overturn *Prentiss* and hold that a defendant's Indian status is an affirmative defense under Section 1152. The government recognizes, however, that *Prentiss* was controlling law during the defendants' trials, and thus that they could have reasonably relied on *Prentiss* to forgo an attempt to establish their Indian status.

At the same time, it seems likely that neither Ruiz nor Hebert has such evidence here. Holding retrials where neither defendant presents colorable Indian-status-related evidence would simply be a waste of judicial resources. Worse yet, a retrial would grant the defendants second chances to convince new juries that they did not commit the grave crimes that their prior juries

unanimously concluded they did. This Court's decision to correct *Prentiss* should not deliver a windfall to defendants convicted of such serious offenses, particularly where a retrial would require the victimized children to relive the traumas of testifying about these subjects.

To balance these competing interests, the Court should grant *limited* remands to the district courts so that Ruiz and Hebert may, if they wish, file motions for new trials based on the change in governing law. In assessing those motions, the district courts should determine whether the error at issue—that is, the error of proceeding under the *Prentiss* framework at trial—was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). If the defendants cannot produce sufficient evidence of Indian status to convince the district courts that a jury could find by a preponderance upon the whole of the evidence that they are Indian, then the motions should be denied. *See Unser*, 165 F.3d at 764 (explaining that "the defendant at least must bear the initial burden of producing evidence which could support a finding in his favor on each element of the defense"); *Dixon*, 548 U.S. at 17 (recognizing the preponderance standard).

There is, to be sure, a paucity of precedent addressing the situation in which a burden of production is reallocated to a defendant after trial, but this proposal is consistent with the district court's familiar task in determining

whether a defendant has raised sufficient evidence of an affirmative defense to be entitled to a jury instruction. *See Mathews v. United States,* 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor[.]"). The well-established standards that govern that inquiry could guide this one, the only difference being that the district courts would be evaluating the proffered evidence before ordering new trials rather than assessing the evidence presented at trial.

## CONCLUSION

The Court should correct the "unfortunate misstep" it took in *Prentiss*, *see Hebert*, 159 F.4th at 792 (Hartz, J., concurring), and hold that a defendant's Indian status in a prosecution under Section 1152 is an affirmative defense on which the defendant, as the person most likely to possess evidence of that defense, bears the burdens of production and persuasion. If the Court does so, it should grant limited remands to the district courts to evaluate whether the defendants are entitled to new trials to shoulder those burdens.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

RYAN ELLISON
First Assistant U.S. Attorney

CHRISTOPHER J. WILSON
U.S. Attorney
Eastern District of Oklahoma

*s/ C. Paige Messec*

C. PAIGE MESSEC
CAITLIN L. DILLON
Assistant U.S. Attorneys
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
paige.messec@usdoj.gov
caitlin.dillon@usdoj.gov

LINDA A. EPPERLEY
Assistant U.S. Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
(918) 684-5100
linda.epperley@usdoj.gov

**CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION**

I HEREBY CERTIFY that the foregoing supplemental brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on June 5, 2026.

I ALSO CERTIFY that the attorneys for Defendant-Appellants Joel Ruiz (Violet N.D. Edelman) and Dennis Hebert (Jared T. Guemmer and Whitney R. Mauldin) are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

I FURTHER CERTIFY that this supplemental brief is double-spaced, uses a 13-point font, and does not exceed 30 pages.

*s/ C. Paige Messec*
C. PAIGE MESSEC
Assistant U.S. Attorney