# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**UNITED STATES OF AMERICA**

**V.**

**JOEL RUIZ**

No. 24-2128
(D.C. No. 1:22-CR-00365-DHU)
(D. N.M.)

**UNITED STATES OF AMERICA**

**V.**

**DENNIS HEBERT**

No. 24-7030
(D.C. No. 6:22-CR-00106-RAW)
(E.D. Okla.)

## BRIEF OF *AMICUS CURIAE* PROFESSOR KEVIN WASHBURN IN SUPPORT OF AFFIRMANCE

Professor Kevin Washburn
UC Berkeley School of Law
431 North Addition, #7200
Berkeley, CA 94720-7200
505.206.9834
kkw@berkeley.edu

# TABLE OF CONTENTS

TABLE OF CASES AND OTHER AUTHORITIES ........ ii

INTEREST OF AMICUS ........ 1

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 2

I. Introduction: this Court Should Respect Explicit Congressional Guidance and Recent Supreme Court Rulings. ........ 2

II. The Court Must Give Effect to All of the Provisions of Chapter 53. ........ 6

III. The Court Need Not Deploy the Complex and Unpredictable Multi-Factor Indian Status Test to Address These Cases ........ 11

CERTIFICATE OF SERVICE AND COMPLIANCE ........ 14

# TABLE OF CASES AND OTHER AUTHORITIES

## CASES


*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288 (1936)....................................10

*Bailey v. United States*, 568 U.S. 186 (2013)....................................................12

*Coyle v. Smith*, 221 U.S. 559 (1911)....................................................10

*Denezpi v. United States*, 596 U.S. 591 (2022)....................................................5

*Ex parte Pero*, 99 F.2d 28 (7th Cir. 1938)....................................................11

*Herrera v. Wyoming*, 587 U.S. 329 (2019)....................................................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).................12

*McGirt v. Oklahoma*, 591 U.S. 894 (2020)....................................................5

*Nebraska v. Parker*, 577 U.S. 481 (2016)....................................................5

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022)....................................................5, 11

*Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978)....................................................3

*Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351 (1962)..................8

*United States v. Antelope*, 430 U.S. 641 (1977)....................................................11

*United States v. Bruce*, 394 F.3d 1215 (9th Cir. 2005)....................................................12

*United States v. Bryant*, 579 U.S. 140 (2016)....................................................4, 5

*United States v. Cooley*, 593 U.S. 345 (2021)....................................................5

*United States v. Cruz*, 554 F.3d 840 (9th Cir. 2009)....................................................12

*United States v. Ives*, 502 F.2d 935 (9th Cir. 1974)....................................................11

*United States v. Maggi*, 598 F.3d 1073 (9th Cir. 2010)....................................................12

*United States v. McBratney*, 104 U.S. 621 (1881) .......................................... 9, 10

*United States v. Prentiss*, 206 F.3d 960 (10th Cir. 2000)........................................... 12

*United States v. Zepeda*, 792 F.3d 1103 (9th Cir. 2015)............................................. 12

*Veneno v. United States*, 607 U.S. ___ (2025) ................................................................ 2

*Yellen v. Confederated Tribes of Chehalis Rsrv.*, 594 U.S. 338 (2021)........................... 12

**STATUTES**

18 U.S.C. § 113 ................................................................................................ 9, 10

18 U.S.C. § 1151 .................................................................................................. 2, 6

18 U.S.C. § 1152 ...................................................................................... 1, 2, 6-10, 13

18 U.S.C. § 1153 ...................................................................................... 1, 2, 6-11, 13

18 U.S.C. § 2241 ........................................................................................................ 9

18 U.S.C. § 2242 ........................................................................................................ 9

18 U.S.C. § 2243 ........................................................................................................ 9

18 U.S.C. § 2244 ........................................................................................................ 9

18 U.S.C. § 661 ........................................................................................................ 10

18 U.S.C. ch. 109A.............................................................................................. 1, 7-9

25 U.S.C. § 1301 ........................................................................................................ 3

25 U.S.C. § 1302 .................................................................................................... 3, 4

25 U.S.C. § 1303 ........................................................................................................ 3

25 U.S.C. § 2801 note.................................................................................................. 3

Adam Walsh Act .......................................................................................................... 8

An Act to Regulate Trade and Intercourse with the Indian Tribes .................................... 2

Violence Against Women Act Reauthorization Act of 2022 ....................................... 5, 11

Violence Against Women Reauthorization Act of 2013 ............................................... 4, 8

**OTHER AUTHORITIES**

*American Indian Law: Cases and Commentary* (Robert T. Anderson, Sarah Krakoff, Monte Mills, Kevin K. Washburn, eds.) (West 5th ed. 2026) ...................................... 13

William C. Canby, Jr., *American Indian Law in a Nutshell*, (8th ed. 2025) ..................... 13

Robert N. Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze*, 18 Ariz. L. Rev. 503 (1976) ....................................................... 12

Emily Cochrane & Mark Walker, *Tribes in a Battle for Their Share of Virus Stimulus Money*, N.Y. Times (June 19, 2020) ................................................................ 12

*Law Enforcement in Indian Country: Hearing Before the S. Comm. on Indian Affs.*, 110th Cong. 54 .............................................................................................................. 4

Simon Romero, *Navajo Nation Becomes Largest Tribe in U.S. After Pandemic Enrollment Surge*, N.Y Times (May 21, 2021)........................................................... 12

Kevin K. Washburn, *American Indians, Crime, and the Law*, 104 Mich. L. Rev. 709 (2006) .......................................................................................................................... 4

Kevin K. Washburn, *Federal Criminal Law and Tribal Self-Determination*, 84 N.C. L. Rev. 779 (2006)................................................................................................... 4

Kevin Washburn, *Reconsidering the Commission's Treatment of Tribal Courts*, 17 Fed. Sent'g Rep. 209 (2005) ................................................................................... 4

Kevin K. Washburn, *Tribal Courts and Federal Sentencing*, 36 Ariz. St. L.J. 403 (2004) 4

**RULES**

U.S. Sent'g Guidelines Manual app. C, amend. 836 .......................................................... 4

## INTEREST OF AMICUS

Amicus is a professor of criminal law and federal Indian law who regularly teaches both subjects and critiques federal criminal justice in Indian country in his scholarship. Amicus was admitted to the Tenth Circuit bar in 1996. Amicus is not affiliated with any party and is interested in these cases for their implications for public safety and criminal justice in Indian country.

## SUMMARY OF ARGUMENT

For a defendant who commits a felony sex offense against an Indian child in Indian country in violation of Chapter 109A of Title 18 of the United States Code, federal law does not care whether the defendant is an Indian or a non-Indian. Such a defendant is liable under federal law without regard to such status and the substantive criminal liability is the same.

It is true that, prior to the enactment of the Major Crimes Act, a defendant's Indian status would have exonerated a defendant who commits a serious crime against another Indian; this is because the General Crimes Act, 18 U.S.C. § 1152, contains an exception for "Indian on Indian" offenses. However, in 1885, Congress abrogated that portion of Section 1152 for all major crimes. Congress authorized the United States to prosecute Indians for any crimes listed in the Major Crimes Act. Since the Indian-on-Indian exception in Section 1152 was abrogated for any major crime, the question of Indian status no longer has a bearing on liability in any major crimes involving an Indian victim. After 1885, both Indians and non-Indians are subject to prosecution for the same substantive felonies. Thus,

this Court should categorically eliminate the Indian/non-Indian status inquiry for such offenses.

The list of "major crimes" has grown so much that it now includes nearly every felony offense in Indian country, including the offenses in these consolidated cases. The Indian-on-Indian exception remains relevant only to a small number of crimes not relevant here, primarily misdemeanors.

While the act of enactment and codification caused the liability rules to be spread across Sections 1152 and 1153 of Chapter 53 of the United States Code, the substantive liability rules are clear. Congress placed the key sections right next to one another in the Code and did not demand that the United States make a formalistic, artificial and unnecessary choice of a specific pathway for prosecution. Neither should this Court.

## ARGUMENT

### I. Introduction: this Court Should Respect Explicit Congressional Guidance and Recent Supreme Court Rulings.

Under Chapter 53 of the United States Code, the United States has taken responsibility for serious crimes in Indian country involving Indians.[1] Congress accepted this responsibility in one of our nation's very first laws, the Indian Trade and Intercourse Act of 1790.[2] A lot of water has passed under the bridge since then, but the responsibility continues. Congress most recently reaffirmed the responsibility in 2010, asserting that "the

[1] The Supreme Court's most committed originalists have questioned the constitutionality of that action. *See Veneno v. United States*, 607 U.S. ___ (2025) (Gorsuch, J., joined by Thomas, J., dissenting from denial of certiorari).
[2] An Act to Regulate Trade and Intercourse with the Indian Tribes (July 22, 1790).

United States has distinct legal, treaty, and trust obligations to provide for the public safety of Indian country."[3]

During the last half century, Congress and the Supreme Court took these same powers away from tribes. In 1968, Congress strictly limited the prosecution power of Indian tribes to petty misdemeanors.[4] Similarly, in 1978, the Supreme Court announced, for the first time in history, that tribes had been divested of the power altogether to prosecute non-Indians. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 195 (1978). As a result of these statutes and the case, a number of serious offenses in Indian country can be prosecuted adequately only be the United States. In limiting tribal authority and making federal power exclusive, Congress and the Supreme Court heightened the responsibility of the United States over public safety in Indian country.

Amicus has been highly critical of the federal government's execution of this responsibility.[5] Amicus has argued, for many reasons discussed below the line, that

---

[3] Tribal Law and Order Act of 2010 § 202(a)(1), 25 U.S.C. § 2801 note.

[4] Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301-1303. It restored authority over full misdemeanors in 1986, and over three-year felonies in 2010.

[5] Amicus has argued that federal law enforcement agencies, United States Attorneys' Offices, and the federal courts have routinely failed to respect even our fundamental American norms of criminal justice. Indian country trials deny the right of all parties and the affected community to a public trial because these federal trials routinely occur outside of Indian country and sometimes 300 or more miles from where the offense occurred. As a result, the criminal trial process fails to mend the fabric of society and help the community achieve justice. Federal venires and juries are drawn almost entirely from outside the jurisdiction (Indian country) in which the crimes occur. As a result, Indian country defendants, Indian or not, tend not to be judged by a representative "jury of their peers," composed of a fair cross-section of the jurisdiction in which the offense occurred (Indian country). Such defendants are not always judged fairly by such juries, and, if convicted, do not feel the anguish and the "sting" of judgment by their community, which serves penal norms of retribution, rehabilitation and deterrence. United States Attorneys are not

Congress should restore the central role of tribes in this area.[6] Congress listened, and, on a bipartisan basis, has acted. Repeatedly.

In 2010, Congress restored the power of tribes to impose felony sentences of up to three years, stackable to nine years for multiple counts in a single proceeding. *See* 25 U.S.C. § 1302(b). In 2013, Congress reauthorized the Violence Against Women Act, restoring tribal power to prosecute non-Indians engaged in consensual relationships with Indians for domestic violence and other offenses.[7] In 2022, Congress eliminated the consensual relationship requirement and expanded the list of offenses tribes can prosecute, to include

institutionally competent to exercise prosecutorial discretion over crimes arising in Indian country because they are generally not "of the community" for whom they are prosecuting. In sum, federal Indian country criminal justice frequently violates basic constitutional norms of American criminal justice and the purposes that animate them. Kevin K. Washburn, *American Indians, Crime, and the Law*, 104 Mich. L. Rev. 709, 713, 729 (2006). Amicus has also argued that federal law enforcement agents tend to be effective only if they work in close concert with tribal law enforcement officers who know the community well. *See generally Law Enforcement in Indian Country: Hearing Before the S. Comm. on Indian Affs.*, 110th Cong. 54-56 (2007) (statement of Kevin Washburn, Associate Professor, University of Minnesota Law School). Finally, when Indian country defendants are sentenced, amicus has argued that tribal court convictions should be considered in criminal history calculations because they are more "legitimate" than federal and state convictions. Kevin K. Washburn, *Tribal Courts and Federal Sentencing*, 36 Ariz. St. L.J. 403, 445 (2004); *see also* Kevin Washburn, *Reconsidering the Commission's Treatment of Tribal Courts*, 17 Fed. Sent'g Rep. 209 (2005) (in which a Circuit Judge, two District Judges and a Federal Public Defender respond to Professor Washburn's position). Amicus's argument was vindicated by the Supreme Court's unanimous decision in 2016 in *United States v. Bryant*, 579 U.S. 140 (2016). But despite *Bryant*, the United States Sentencing Commission has declined to change its position. *See* U.S. Sent'g Guidelines Manual app. C, amend. 836 (U.S. Sent'g Comm'n 2025).

[6] Kevin K. Washburn, *Federal Criminal Law and Tribal Self-Determination*, 84 N.C. L. Rev. 779, 848–49 (2006).

[7] Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 904, 127 Stat. 54.

child violence, stranger rape, and violence against tribal police officers and others.[8] Congress took these actions to improve public safety in Indian country.

The current Supreme Court has also revisited the role of Indian tribes in criminal justice in Indian country and ruled decisively in favor of public safety in Indian country. In the decade since October Term 2015, Indian tribes and parties aligned with tribal interests have not lost a single case in the Supreme Court involving criminal justice. Of the seven cases involving Indian country criminal justice heard by the Supreme Court, tribal interests clearly prevailed in six of them,[9] and unanimously in three of them. As to the seventh, *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 647 (2022), tribal advocates have mixed views, so amicus won't call it a clear victory for tribal interests. However, the Court held that states have concurrent jurisdiction to prosecute non-Indians in Indian country, even for crimes against Indians. That ruling brings state prosecutors to bear on the serious problem of crime by non-Indians in Indian Country. If state prosecutors meet this

[8] Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 804, 136 Stat. 49.

[9] *Nebraska v. Parker*, 577 U.S. 481, 494 (2016) (Omaha reservation still Indian country for purposes of tribal liquor regulation of non-Indians despite arguments of disestablishment); *United States v. Bryant*, 579 U.S. 140, 153-54 (2016) (tribal court conviction may be used as a predicate offense for aggravated federal felony); *Herrera v. Wyoming*, 587 U.S. 329, 344 (2019) (treaty hunting rights not abrogated by Wyoming's admission to the Union, reversing state convictions of tribal member); *McGirt v. Oklahoma*, 591 U.S. 894, 937-38 (2020) (Muskogee Creek reservation not disestablished or diminished); *United States v. Cooley*, 593 U.S. 345, 348 (2021) (tribal police officers may detain non-Indians temporarily for purposes of investigation and public safety); *Denezpi v. United States*, 596 U.S. 591, 598-99 (2022) (no Double Jeopardy Clause violation under dual sovereignty doctrine for prosecutions by trial Court of Indian Offenses and federal court); *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 647 (2022) (state may prosecute crime by non-Indian offender against Indian victim).

responsibility, *Castro-Huerta*, too, will produce greater public safety in Indian country.

In sum, in all seven of these cases, the Supreme Court rulings increased public safety in Indian country at the cost of greater jeopardy for non-Indians. In contrast, the panel decisions in this case frustrate Congressional concerns and are out of step with the direction of recent Supreme Court decisions. They undermine public safety in Indian country but without advancing any obvious legitimate interest of defendants.

## II. The Court Must Give Effect to All of the Provisions of Chapter 53.

In the consolidated cases at bar, the Court has engaged a serious problem. Amicus writes for the narrow purpose of identifying a range of serious cases, including these two, in which courts and juries need not tie themselves in knots seeking to address the existential question of whether a person is, or is not, an Indian.

Amicus respectfully encourages the Court to consider together all three Indian country criminal justice statutes that comprise the heart of Chapter 53 of the United States Criminal Code, namely, 18 U.S.C. §§ 1151, 1152, and 1153. The statutes must be considered together to properly address the federal responsibility to provide public safety and criminal justice in Indian country. Considering one statute in isolation, without awareness of how each works together in the statutory scheme, has produced a result that undermines the important purposes of this scheme. Viewing Section 1152 in isolation has wasted precious public and judicial resources and produced absurd results. The law no longer recognizes the exception on which the so-called defense is based. That exception is a vestige and the defense a mirage.

In both *Ruiz* and *Hebert*, each defendant was prosecuted for committing a very

serious sex offense against a child under Chapters 53 and 109A of the Criminal Code. Both men were convicted, beyond a reasonable doubt, of the substantive facts involving these rape offenses and the victims in each case were Indian.

Both men were prosecuted under the General Crimes Act, also known as the Indian Country Crimes Act, codified at 18 U.S.C. § 1152. In both cases, the panels decided to reverse the convictions asserting that the government failed to prove beyond a reasonable doubt that the defendant was a non-Indian. While proving a negative *beyond a reasonable doubt* is a very difficult task,[10] identifying the government's burden as to that fact is unnecessary for serious crimes that are listed in Section 1153. In any such case with an Indian victim, federal jurisdiction (and the responsibility) exists. A defendant is guilty (under the Section 1153 pathway if he is an Indian or under the Section 1152 pathway if he is not). If the crime is one which is prosecutable under either Section 1152 or 1153 it is of no moment, which is the proper statute. Analyzing that question is an exercise in empty formalism.

Amicus recommends that the Court adopt the following rule: If a defendant is prosecuted for violating any of the substantive offenses that are listed in 18 U.S.C. § 1153 (and whether the stated jurisdictional basis is Section 1152 or Section 1153), the

[10] In a country with 575 federally-recognized tribal nations or a state with 38 (Oklahoma) or 23 (New Mexico), for example, how many tribal registrars must the government subpoena to testify that the defendant is not on their rolls to meet the standard of beyond a reasonable doubt? Moreover, while inclusion on a tribal roll is itself sufficient to establish tribal membership, absence from a tribal roll is necessary but not sufficient in the Ninth or Tenth Circuits to disprove Indian status. A person may be an "Indian" for purposes of federal law even absent enrollment.

government must prove beyond a reasonable doubt that the victim in the case is an Indian, that the case occurred in Indian country, and that the elements of the substantive felony offense are met. If those elements are established, the defendant faces criminal liability whether Indian or non-Indian, and the defendant has had adequate notice of the basis of the prosecution.

The key to harmonizing these statutes is an understanding of their development. In 1790 Congress passed the provision now called the Indian General Crimes Act (GCA), applying the federal enclaves laws in Indian country. Although the GCA has an explicit exception for "Indian-on-Indian" offenses, which once made "non-Indian" status a potential defense to a prosecution under that exception, Congress eliminated that exception for all of the most serious offenses in 1885 with passage of the Major Crimes Act.

The Major Crimes Act abrogated the "Indian on Indian" exception originally for seven serious felonies. By 1962, it included ten offenses[11] and more were added through time. The most recent additions to the list were "felony child abuse or neglect," added as part of the Adam Walsh Act in 2006,[12] and an expansion from four to seven assault offenses in the Violence Against Women Reauthorization Act of 2013.[13]

The Major Crimes Act now includes 50 or more major offenses. At the most serious end of the spectrum are murder, manslaughter, kidnapping, maiming, and more than three dozen separate felony sex offenses and attempts in Chapter 109A, some of which are

---

[11] *See Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351, 352 n.2 (1962).
[12] *See* Pub. L. No. 109–248, title II, § 215, 120 Stat. 587, at 617 (July 27, 2006).
[13] *See* Pub. L. No. 113–4, title IX, § 906(b), 127 Stat. 54, at 125 (Mar. 7, 2013).

subject to life in prison.[14] The statute also includes seven forms of felony assault,[15] incest, felony child abuse and neglect, arson, burglary and robbery. At the less serious end of the scale, it includes any felony theft (including both theft "from the person," such as purse-snatching, and theft exceeding $1000 in value).

In sum, Congress has carefully identified an extensive list of offenses for which Indians may be prosecuted (see the Major Crimes Act) and non-Indians may be prosecuted (see General Crimes Act). Considering these statutes together, Indian or non-Indian status of the defendant is irrelevant, if the victim was an Indian. Although the "Indian on Indian" exception continues to exist, Congress abrogated it entirely, except for a handful of minor offenses. In sum, for cases alleging any of the substantive offenses listed in the Major Crimes Act and involving an Indian victim, Chapter 53 no longer includes any "Indian on Indian" exception. The defense is gone. Thus, it is no longer necessary to identify a person as an Indian or a non-Indian to find a person guilty of the substantive offense. If an Indian victim is present, the federal interest is clear and federal jurisdiction attaches.[16] In sum,

---

[14] The felonies in Chapter 109A includes at least six forms of aggravated sexual assault in 18 U.S.C. § 2241, with sentences of up to life in prison, and also attempts to commit any of those six offenses. It also includes at least eight separate offenses of sexual abuse in 18 U.S.C. §§ 2242 and 2243, and attempts to commit any of them. It includes at least eight separate offenses of Abusive Sexual Contact identified in 18 U.S.C. § 2244.

[15] Section 1153 assimilates all of the felonies (but not he misdemeanors) within 18 U.S.C. § 113 and assault against an individual who has not attained the age of 16 years.

[16] If the victim is not a non-Indian, the Court may nevertheless have jurisdiction, but only if the defendant is an Indian. Under federal law, the existence of an Indian as either the victim or defendant, or both, is necessary to establish federal jurisdiction. *See United States v. McBratney*, 104 U.S. 621 (1881). Without an Indian victim, the United States may nevertheless possess jurisdiction over an Indian defendant under 18 U.S.C. § 1152. In such a case, the United States must establish the Indian status of the defendant. But this requirement is found nowhere in Section 1152. It is constitutional, an interpretation of the

Congress has made status irrelevant for major crimes. Period. Full Stop.

While the Court may resolve questions as to the remaining minor offenses, the Court need not.[17] In light of the legendary complexity of the Indian country jurisdictional scheme, caution here may be prudent. Amicus believes the Court should address only the cases before it, involving Indian victims and major crimes.

To understand which non-major cases against an Indian might nevertheless raise the non-Indian status question under 1152, one could imagine a simple assault[18] or a misdemeanor theft involving $1000 or less in value[19] involving a non-Indian defendant and an Indian victim, or vice versa. Because these minor offenses are outside the Major Crimes Act, they cannot be charged against an Indian defendant for an offense against an Indian victim.[20] Thus, for these misdemeanors, the United States would need to prove that either

---

equal footing doctrine. *See McBratney*, 104 U.S. at 624 (admission to the union generally allows states to prosecute non-Indians within their boundaries under equal footing doctrine); *Coyle v. Smith*, 221 U.S. 559, 567-68 (1911) (equal footing doctrine is constitutional).

[17] Judicial restraint counsels that court should resolve only the issue that must be decided to resolve the case before it. That principle of constitutional interpretation, *see generally Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–348 (1936) (Brandeis, J., concurring), may be relevant for a statutory scheme developed almost contemporaneously with the Constitution.

[18] 18 U.S.C. § 113. Of all offenses in Section 113, the Major Crimes Act omits only simple assault and assault by striking, beating or wounding, which are full misdemeanors.

[19] 18 U.S.C. § 661.

[20] A case by the United States against an Indian for a non-major offense with an Indian victim would offend tribal sovereignty and undermine Congressional efforts to preserve exclusive tribal authority over minor offenses. Likewise, *United States v. McBratney*, 104 U.S. 621 (1881), prohibits the United States from bringing a case involving only non-Indians, even in Indian country, in deference to state sovereignty. To establish a proper federal interest, the United States must always prove than an Indian is involved as either the defendant or a victim.

the defendant or the victim is a non-Indian.

Because of recent developments in the law, that is, however, no longer an important question.[21] Moreover, how often is the United States Attorney likely to bring misdemeanor cases against non-Indians in Indian country anyway? [22]

### III. The Court Need Not Deploy the Complex and Unpredictable Multi-Factor Indian Status Test to Address These Cases

Under the federal Indian country criminal justice scheme, a person either is an Indian or is not an Indian. The status question is binary. But it is not simple.

The Supreme Court identified the existential question about the proper scope of Indian status in a stray line of dictum in a footnote in *United States v. Antelope* in 1977, and then explicitly "intimated no views on the matter."[23] That dictum and non-answer has

---

[21] First, tribal jurisdiction over non-Indians has expanded to include prosecution of non-Indians for common forms of assault, including assault of tribal justice personnel; child violence; dating violence; domestic violence; obstruction of justice; sexual violence; sex trafficking; stalking; and criminal violations of protection orders. *See* Violence Against Women Act Reauthorization Act of 2022 § 804, 25 U.S.C. § 1304. Second, in *Oklahoma v. Castro-Huerta*, the Supreme Court authorized states to prosecute non-Indians who commit any offense against an Indian in Indian country. The federal government may now have to queue up if it wishes to prosecute "non-Indian on Indian" misdemeanors in Indian country.

[22] It is also an empirical question as to how many cases involve crimes by non-Indians that are not listed in the Major Crimes Act but nevertheless merit federal prosecution. That data likely exists within the Department of Justice or perhaps the Administrative Office of the U.S. Courts. It is likely a small number.

[23] *United States v. Antelope*, 430 U.S. 641, 646 n.7 (1977). The full text reads: "It should be noted, however, that enrollment in an official tribe has not been held to be an absolute requirement for federal jurisdiction, at least where the Indian defendant lived on the reservation and "maintained tribal relations with the Indians thereon" Ex parte Pero, 99 F.2d 28, 30 (C.A.7 1938)). See also United States v. Ives, 504 F.2d 935, 953 (C.A.9 1974) (dicta) Since respondents are enrolled tribal members, we are not called on to decide whether nonenrolled Indians are subject to 18 U.S.C. § 1153, and we therefore intimate no views on the matter.")

produced no end of mischief in the lower courts, particularly in the Ninth Circuit.[24] The circuit courts have rejected "bright line" approaches and instead have developed differing, complex and unpredictable multi-factor tests[25] of the sort that have likely left the late Antonin Scalia spinning in his grave.[26]

One of the first scholars to address the Indian country criminal jurisdiction scheme famously called it "a jurisdictional maze" in part due to the question of Indian status.[27]

---

[24] *See generally United States v. Zepeda*, 792 F.3d 1103 (9th Cir. 2015) (en banc) (citing and discussing *United States v. Bruce*, 394 F.3d 1215, 1223 (9th Cir. 2005), *United States v. Maggi*, 598 F.3d 1073, 1080–81 (9th Cir. 2010), and *United States v. Cruz*, 554 F.3d 840 (9th Cir. 2009), among others). *See also United States v. Prentiss*, 206 F.3d 960 (10th Cir. 2000), *vacated and remanded*, 256 F.3d 971, 985 (10th Cir. 2001) (en banc), *conviction vacated*, 273 F.3d 1277 (10th Cir. 2001).

[25] The multifactor approach may have been needed in the past when many legitimate tribal members were not formally enrolled in their tribes. However, the decision by the first Trump Administration to grant $8 billion in a Coronavirus Relief Fund to tribes may have resolved the issue. *Cf. Yellen v. Confederated Tribes of Chehalis Rsrv.*, 594 U.S. 338 (2021). Because the CARES Act funding was distributed based on enrolled tribal populations, that law successfully incentivized all tribes in the United States to ensure enrollment of all citizens. *See* Emily Cochrane & Mark Walker, *Tribes in a Battle for Their Share of Virus Stimulus Money*, N.Y. Times (June 19, 2020), https://www.nytimes.com/2020/06/19/us/politics/tribes-coronavirus-stimulus.html.
Tribes, in turn, mostly distributed the funds to members on a per capita basis, a controversial choice that nevertheless incentivized eligible tribal citizens to enroll. During this time, for example, the Navajo Nation's enrollment went from 306,268 in 2020, to 399,494 in 2021, an increase of more than 93,000 members. Simon Romero, *Navajo Nation Becomes Largest Tribe in U.S. After Pandemic Enrollment Surge*, N.Y. Times (May 21, 2021). https://www.nytimes.com/2021/05/21/us/navajo-cherokee-population.html.

[26] Justice Scalia famously opposed multi-factored tests for their ambiguity. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137 (2014) (Scalia, writing for the majority, criticizing one such test because it can "yield unpredictable and at times arbitrary results."); *Bailey v. United States*, 568 U.S. 186, 204–05 (2013) (Scalia, J., concurring, criticizing an "open-ended balancing" test that used a "smorgasbord of law enforcement interests" when a simple categorical rule would be more simple to apply).

[27] Robert N. Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze*, 18 Ariz. L. Rev. 503, 520 (1976).

Ninth Circuit Judge Wm. C. Canby, Jr., included the chart of Indian Country jurisdiction in his longstanding *American Indian Law in a Nutshell*,[28] and law professors enjoy torturing their students with this chart.[29]

Amicus urges the Court to take this opportunity to reduce some unnecessary complexity by doing what Congress has already done clearly: admit that the "Indian on Indian" exception has been abrogated for all major crimes. The Court should adopt a simple rule. Going forward, any indictment for a major crime is sufficient if it identifies Chapter 53 as the jurisdictional basis (rather than specifying Sections 1152 or 1153), alleges an Indian victim, and an Indian country situs.[30] That would not address all Indian country cases, but it resolves cases like the ones at issue here.

Respectfully submitted,

Professor Kevin Washburn
UC Berkeley School of Law
431 North Addition, #7200
Berkeley, CA 94720-7200
505.206.9834
kkw@berkeley.edu

[28] *See* William C. Canby, Jr., *American Indian Law in a Nutshell* 222-223 (8th ed. 2025). *See also id.* at 194-195 for a discussion of some of the complexities.
[29] *See American Indian Law: Cases and Commentary* 323 (Robert T. Anderson, Sarah Krakoff, Monte Mills, Kevin K. Washburn, eds., 5th ed. 2026).
[30] An alternative is to recognize any error as harmless. If the defendant charges a Major Crimes offense, and all of the substantive elements including Indian country and an Indian victim are established, any variance in the proof as to the (legally irrelevant) Indian status of the defendant is surely harmless.

## CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that the foregoing Brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on June 11, 2026.

I also certify that the attorneys for Defendants-Appellants Joel Ruiz (Violet N.D. Edelman), Dennis Hebert (Jared T. Guemmer and Whitney Mauldin), and the lead attorneys for the United States (C. Paige Messec, Caitlin L. Dillon and Linda A. Epperly) are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

I also certify that the foregoing Brief is double-spaced, uses 13-point font, and at 14 pages, is less than half the length of the 30-page limit for the principal party's brief, not counting the items excluded from length in Fed. R. App. P. 32(f).

Date: June 11, 2026

/s/ Professor Kevin Washburn
Professor Kevin Washburn