IN THE

# United States Court of Appeals

FOR THE TENTH CIRCUIT

---

**UNITED STATES OF AMERICA**

**v.**

**JOEL RUIZ**

NO. 24-2128
(D.C. NO. 1:22-CR-00365-DHU)
(D. N.M.)

**UNITED STATES OF AMERICA**

**v.**

**DENNIS HEBERT**

NO. 24-7030
(D.C. NO. 6:22-CR-00106-RAW)
(E.D. OKLA.)

## UNITED STATES' SUPPLEMENTAL REPLY BRIEF EN BANC

---

July 2026


TODD BLANCHE
*Acting Attorney General*

RYAN ELLISON
*First Assistant U.S. Attorney*
*District of New Mexico*

CHRISTOPHER J. WILSON
*U.S. Attorney*
*Eastern District of Oklahoma*

C. PAIGE MESSEC
CAITLIN L. DILLON
*Assistant U.S. Attorneys*
201 3rd St. NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274

LINDA A. EPPERLEY
*Assistant U.S. Attorney*
520 Denison Avenue
Muskogee, Oklahoma 74401
(918) 684-5100

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CASES AND OTHER AUTHORITIES ........................................... ii

REPLY ........................................................................................................1

I. Diversity of Indian status is not a question of subject-matter jurisdiction under Section 1152. ..........................................................................1

II. Congress's power to enact criminal laws in Indian Country is not limited to cases with diversity of Indian status. ..........................................................7

III. The proviso rule applies to the intra-Indian exception. ..................................8

IV. *Famous Smith* did not decide any question of burden......................................9

V. The Indian canon supports the government's reading..................................11

VI. Defendants bear the burden of persuasion..................................................13

VII. The rule of lenity has no role to play here...................................................14

VIII. A new trial would not offend double jeopardy or due process.......................15

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION ..........................17

## TABLE OF CASES AND OTHER AUTHORITIES

## TABLE OF CASES

**PAGE**

Cases

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ....................................................................................4-5

*Burks v. United States*,
437 U.S. 1 (1978) ........................................................................................15

*Chapman v. United States*,
500 U.S. 453 (1991) .......................................................................................4

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) ................................................................................8, 13

*Davis v. United States*,
160 U.S. 469 (1895) .......................................................................................3

*Dixon v. United States*,
548 U.S. 1 (2006) ..........................................................................................13

*Ex parte Bain*,
121 U.S. 1 (1887) ............................................................................................6

*Ex parte Kan-gi-shun-ca* ("*Crow Dog*"),
109 U.S. 556 (1883) ....................................................................................5, 6

*Famous Smith v. United States*,
151 U.S. 50 (1894) ............................................................................. 5-6, 9-11

*Haaland v. Brackeen*,
599 U.S. 255 (2023) .......................................................................................8

*HRI, Inc. v. E.P.A.*,
198 F.3d 1224 (10th Cir. 2000) ......................................................................2

*Jicarilla Apache Tribe v. Andrus*,
687 F.2d 1324 (10th Cir. 1982) .......................................................... 2

*Keeble v. United States*,
412 U.S. 205 (1973) .......................................................... 7

*Louie v. United States*,
254 U.S. 548 (1921) .......................................................... 2-3, 5

*Marion Cnty. Comm'rs v. Clark*,
94 U.S. 278 (1876) .......................................................... 10

*McGirt v. Oklahoma*,
591 U.S. 894 (2020) .......................................................... 7

*Montana v. Blackfeet Tribe of Indians*,
471 U.S. 759 (1985) .......................................................... 11

*Musacchio v. United States*,
577 U.S. 237 (2016) .......................................................... 1, 3

*Muscarello v. United States*,
524 U.S. 125 (1998) .......................................................... 4

*Negonsott v. Samuels*,
507 U.S. 99 (1993) .......................................................... 6-7, 12

*Nicoli v. Briggs*,
83 F.2d 375 (10th Cir. 1936) .......................................................... 8

*Patterson v. New York*,
432 U.S. 197 (1977) .......................................................... 3

*Ramah Navajo Chapter v. Salazar*,
644 F.3d 1054 (10th Cir. 2011) .......................................................... 2

*Smith v. United States*,
568 U.S. 106 (2013) .......................................................... 13

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......................................................... 1, 4-5

*Torres v. Lynch*,
578 U.S. 452 (2016) ....................................................................2-3, 8

*United States v. Brisk*,
171 F.3d 514 (7th Cir. 1999)....................................................................4

*United States v. Bryant*,
579 U.S. 140 (2016) ....................................................................7, 12

*United States v. Cook*,
84 U.S. 168 (1872) ....................................................................8

*United States v. Cotton*,
535 U.S. 625 (2002) ....................................................................4, 6

*United States v. Gay*,
240 F.3d 1222 (10th Cir. 2001)....................................................................14

*United States v. Haggerty*,
997 F.3d 292 (5th Cir. 2021)....................................................................4, 11

*United States v. Hebert*,
159 F.4th 777 (10th Cir. 2025)....................................................................13

*United States v. Kagama*,
118 U.S. 375 (1886) ....................................................................5, 8

*United States v. Lanier*,
520 U.S. 259 (1997) ....................................................................15

*United States v. McBratney*,
104 U.S. 621 (1881) ....................................................................5-6

*United States v. Osage Wind, LLC*,
871 F.3d 1078 (10th Cir. 2017)....................................................................12

*United States v. Prentiss*,
256 F.3d 971 (10th Cir. 2001)....................................................................4

*United States v. Rodgers*,
466 U.S. 475 (1984) ....................................................................15

*United States v. Sutton*,
215 U.S. 291 (1909) ........................................................................8

*United States v. Tony*,
637 F.3d 1153 (10th Cir. 2011) ........................................................1

*United States v. White Horse*,
316 F.3d 769 (8th Cir. 2003)...........................................................4

*United States v. Williams*,
341 U.S. 58 (1951) ......................................................................1, 5

*United States v. Wilson*,
420 U.S. 332 (1975) ......................................................................15

<u>Statutes</u>

18 U.S.C. § 241 ...............................................................................1

18 U.S.C. § 2241(c)...........................................................................2

18 U.S.C. § 3231...............................................................................1

18 U.S.C. § 1153...............................................................................2

REPLY

## I. **Diversity of Indian status is not a question of subject-matter jurisdiction under Section 1152.**

In his supplemental brief, Hebert offers essentially one response to the conclusion that Section 1152's Indian status proviso must be an affirmative defense. Hoping to take advantage of the principle that the party invoking a court's jurisdiction bears the burden of establishing it, Hebert contends that the proviso is a jurisdictional element of the statute that the government must establish. That contention, however, overlooks pertinent authority and relies upon bygone notions of jurisdiction.

Subject-matter jurisdiction refers to "the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). "Federal courts' general criminal subject-matter jurisdiction comes from 18 U.S.C. § 3231, which states: 'The district courts... shall have original jurisdiction...of all offenses against the laws of the United States.'" *Musacchio v. United States*, 577 U.S. 237, 246–47 (2016). Thus, when a defendant is charged with violating a federal law, a district court has subject-matter jurisdiction. *United States v. Williams*, 341 U.S. 58, 65 (1951) (defendants charged with violating 18 U.S.C. § 241, "hence" Section 3231 bestowed jurisdiction). Nothing more is required: as this Court has said, Section 3231 is "the beginning and the end of the 'jurisdictional' inquiry." *United States v. Tony*, 637 F.3d 1153, 1158 (10th Cir. 2011). And because Hebert and Ruiz

were charged with violating 18 U.S.C. § 2241(c), an "offense[] against the laws of the United States," that straightforward principle alone defeats Hebert's contention.

Federal criminal offenses often contain an element, like Section 1152's "Indian country" requirement, that "ties the substantive offense…to one of Congress's constitutional powers," *Torres v. Lynch*, 578 U.S. 452, 457 (2016)—in other words, to Congress's legislative jurisdiction. These requirements are often referred to as "jurisdictional" elements, *id.*, but they do not implicate a court's subject-matter jurisdiction.

*Louie v. United States*, 254 U.S. 548 (1921), illustrates this principle. Louie had been convicted of murder on the Coeur d'Alene reservation under a federal murder statute and the Major Crimes Act (now 18 U.S.C. § 1153). *Id*. at 549–50. That Act subjects an Indian committing murder (and other listed offenses) in Indian Country to the same penalties as would apply in federal enclaves. *Id*. at 550. Louie filed a writ of error to the Ninth Circuit, asserting that the murder had occurred on non-Indian land. *Id*. at 549. At the time, a writ of error challenging the district court's jurisdiction could only be taken directly to the Supreme Court, *id*., and the Ninth Circuit, believing the dispute to be jurisdictional, therefore dismissed the writ, *id*.

The Supreme Court reversed that dismissal. *Louie,* 254 U.S. at 551. Louie, it explained, "raised a question, not of the jurisdiction of [the district] court, but of the jurisdiction of the United States." *Id*. at 550. Louie's claim that he "did not violate the laws of the United States" because his crime was not committed in Indian Country was in fact an argument that "an essential element of the crime against the

United States was lacking," not that the district court lacked jurisdiction. *Id*. Or, as the Court also put it, Louie's claim "did not raise a question properly of the jurisdiction of the court, but went to the merits[.]" *Id*. at 551. And to reinforce that point, it cited Section 3231's predecessor and wrote that "District Courts have original jurisdiction of all crimes and offenses cognizable under the authority of the United States[.]" *Id*. at 550.

Like the Major Crimes Act, Section 1152 "ties [a] substantive offense…to one of Congress's constitutional powers[.]" *Torres*, 578 U.S. at 457. It does not bestow subject-matter jurisdiction upon district courts; that, instead, is accomplished by Section 3231. Section 1152 simply extends the reach of existing federal enclave laws to Indian Country, before excepting offenses between Indians. Unless a statute "expressly refer[s] to subject-matter jurisdiction or speak[s] in jurisdictional terms," *Musacchio*, 577 U.S. at 246, it will not be "treated as having jurisdictional attributes," *id*. (quotation and citation omitted). This is so even where the statute uses "mandatory language" prohibiting prosecution or trial absent some statutory requirement. *Id*.

The defendants' argument that their crimes against Indian victims are not encompassed by Section 1152 because they themselves have not been proven to be non-Indian, goes, just like the land status in *Louie*, to the merits of the prosecution, not the subject-matter jurisdiction of the district court. If even the "jurisdictional" element in Section 1152—the land's status—does not implicate a court's subject-matter jurisdiction, neither does the carve-out created by the intra-Indian proviso.

Consistent with this framework, the second majority opinion in *Prentiss* correctly held that "the Indian/non–Indian statuses of Defendant and his victim" do not implicate the district court's subject-matter jurisdiction. *United States v. Prentiss*, 256 F.3d 971, 982 (10th Cir. 2001) (en banc). The Fifth and the Eighth Circuits agree. *United States v. White Horse*, 316 F.3d 769, 772 (8th Cir. 2003); *United States v. Haggerty*, 997 F.3d 292, 297 n.5 (5th Cir. 2021). Hebert cites no circuit holding otherwise.[1]

To be sure, "jurisdiction" "is a word of many, too many, meanings," *Steel Co.*, 523 U.S. at 90 (quotation omitted), and "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, [the Supreme] Court and others have been less than meticulous." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006). Older cases, in particular, often employed a more "elastic" concept of jurisdiction, one that is now understood to be distinct from a court's subject-matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002). Recognizing the term's evolution, the Court has instructed that cases with "drive-by jurisdictional rulings"—dismissing for lack of jurisdiction "when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction"—"should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim[.]" *Arbaugh*,

[1] *United States v. Brisk*, 171 F.3d 514, 519–20 (7th Cir. 1999), characterized *Crow Dog* as involving subject-matter jurisdiction but ultimately held that Section 1152 did not apply at all because the charged statute was not an enclave law.

546 U.S. at 511 (citations omitted).

The "profligate" use of jurisdictional vocabulary, *Arbaugh*, 546 U.S. at 510, explains *United States v. McBratney*, 104 U.S. 621 (1881), *Ex parte Kan-gi-shun-ca ("Crow Dog")*, 109 U.S. 556 (1883), and *Famous Smith v. United States*, 151 U.S. 50 (1894).[2] *McBratney* held that Congress could not regulate crime in Indian Country when both perpetrator and victim were non-Indian, 104 U.S. at 624; it then stated, without further analysis, that the district court lacked jurisdiction, *id.*[3] And in *Crow Dog* and *Famous Smith*, the Court spoke of the intra-Indian exception as going to the district court's "jurisdiction." *Crow Dog,* 109 U.S. at 562, 572; *Famous Smith*, 151 U.S. at 53, 55, 56. But in none of these cases did the Court debate the jurisdictional framing, in none did the parties "cross swords" over it, *Arbaugh,* 546 U.S. at 512, and in none did the Court "display the slightest awareness that anything *turned upon* whether the [matter] was technically jurisdictional," *Steel Co.*, 523 U.S. at 91. In contrast, where the distinction between an Indian Country jurisdictional element and subject-matter jurisdiction was put squarely at issue, the Court conclusively held that

[2] *United States v. Kagama*, 118 U.S. 375, 383 (1886), another case of that era, simply stated—in discussing Congress's intent to punish Indians federally for certain crimes committed in Indian Country—that the intra-Indian exception "expressly excludes from that jurisdiction the case of a crime committed by one Indian against another in the Indian country." It does not tie that exception to a court's subject-matter jurisdiction.

[3] The fact that a law exceeds Congress's constitutional powers is no longer understood to deprive a district court of subject-matter jurisdiction. *Williams*, 341 U.S. at 66.

the jurisdictional element did not implicate subject-matter jurisdiction. *Louie*, 254 U.S. at 550–51.

Hebert argues that the reservations expressed in *Cotton* and other recent cases do not undermine his reliance on *McBratney*, *Ex parte Crow Dog*, and *Famous Smith* because they "used the same language we use today when referring to subject matter jurisdiction," Hebert Br. 15–16, including referring to the court's authority to proceed. But that was true of the nineteenth-century case overruled in *Cotton*, too. In *Ex parte Bain*, 121 U.S. 1 (1887), the Court distinguished jurisdiction from "error in [the] proceedings," *id*. at 3, and referred to it as a court's "right to proceed any further in the progress of the case," *id*. at 13. *Cotton* nevertheless overruled *Bain*'s holding that a faulty indictment deprives a court of jurisdiction, explaining that *Bain*'s "analysis of that issue in terms of 'jurisdiction' was mistaken in the light of later cases," 535 U.S. at 631, and that *Bain*'s idea of jurisdiction "is not what the term 'jurisdiction' means today," *id*. at 630.

Hebert attempts to freshen *McBratney, Crow Dog,* and *Famous Smith* with more recent citations, but none of his modern cases endorse the outdated jurisdictional views of the older cases. He cites, for example, *Negonsott v. Samuels*, 507 U.S. 99 (1993). *Negonsott,* however*,* had nothing to do with whether the Indian status of the parties under either Section 1152 or 1153 implicates subject-matter jurisdiction. It held that Kansas, by virtue of the Kansas Act, has "'legislative' jurisdiction" to "define and prosecute" crimes similar to those covered by the Major Crimes Act (Section 1153), while noting that only federal courts have jurisdiction to try

individuals under that Act. *Id*. at 105. The fact that *Negonsott* mentioned Section 1152 as part of the "complex patchwork" of "criminal jurisdiction" in Indian Country, *id*. at 102—and referred to "jurisdictional guideposts," *id*. at 103—does not, as Hebert claims (at 11–12), evince any "recognition that Section 1152 strips federal courts of jurisdiction over Indian-on-Indian criminal offenses."

Hebert next offers *Keeble v. United States*, 412 U.S. 205 (1973), *United States v. Bryant*, 579 U.S. 140 (2016), and *McGirt v. Oklahoma*, 591 U.S. 894 (2020). None of these cases involve questions of subject-matter jurisdiction in relation to Indian status. *Keeble* and *Bryant*, in the course of recounting background information, merely describe *Crow Dog* in *Crow Dog*'s own terms. *Keeble*, 412 U.S. at 209–10 (describing the impetus of the Major Crimes Act); *Bryant*, 579 U.S. at 146–47 (describing an "enforcement gap" in Indian Country). Neither case affirms the correctness of *Crow Dog*'s jurisdictional framing. And *McGirt*'s "favorabl[e] quot[ation]" of *Crow Dog* (Hebert Br. 13) does not mention jurisdiction at all. 591 U.S. at 929.

In conclusion, diversity of Indian status between a defendant and victim does not go to a court's subject-matter jurisdiction to hear a case brought under a federal enclave law and Section 1152. The principle that a party invoking the court's subject-matter jurisdiction bears the burden of proving it therefore has no relevance here.

## II. Congress's power to enact criminal laws in Indian Country is not limited to cases with diversity of Indian status.

Ruiz (at 1–6) intertwines two arguments: (1) that Congress did not *intend* to reach intra-Indian offenses under Section 1152, and (2) that Congress lacks the *power*

to reach intra-Indian offenses under Section 1152, thus requiring the government to prove Indian status in order to "connect[] the law to one of Congress's enumerated powers," Ruiz Supp. Br. 2 (quoting *Torres*, 578 U.S. at 467).

The first point is accurate, as far as it goes. But the intent to exempt intra-Indian offenses from Section 1152's coverage is wholly consistent with intending that the defendant bear the usual burden of proving a statutory exception.

The second assertion is incorrect. Congress's power to impose criminal law in Indian Country does not depend on diversity of Indian status. *Kagama*, 118 U.S. 375 (upholding the Major Crimes Act as applied to an intra-Indian murder); *United States v. Sutton*, 215 U.S. 291, 295 (1909) (upholding law against importing liquor into Indian Country without regard to the defendant's status). "Congress's power to legislate with respect to the Indian tribes" is "muscular" and "trace[d]…to multiple sources." *Haaland v. Brackeen*, 599 U.S. 255, 273 (2023). The connection to congressional authority is found in Section 1152's land-status element, not its intra-Indian proviso. For the same reason, this case presents no question of constitutional avoidance (Ruiz Supp. Br. 12–13).

## III. <u>The proviso rule applies to the intra-Indian exception.</u>

Ruiz (at 6–8) contends that *McKelvey*'s proviso rule does not apply to Section 1152's intra-Indian exception because the rule applies only to statutes that define a criminal offense. The proviso rule, however, is not so limited. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 702 (2025) (ERISA exemption); *United States v. Cook*, 84 U.S. 168, 179 (1872) (exception to a statute of limitations); *Nicoli v. Briggs*, 83 F.2d

375, 379 (10th Cir. 1936) (statute creating grounds of deportability). But even if it were, that would not help Ruiz because Section 1152 does, in effect, "defin[e] the elements of an offense." Ruiz Supp. Br. 7 (quoting *McKelvey*). In fact, Section 1152 defines an element of scores of offenses by adding an Indian Country option to every enclave crime's "jurisdictional situs" element. Ruiz's attempted limitation of the proviso rule is in tension, to say the least, with his core argument that diversity of Indian status is an *element of his crime* such that the government's failure to prove it beyond a reasonable doubt entitles him to acquittal. And though Ruiz notes (at 7–8) that the proviso rule is often applied to defenses that negate substantive elements or excuse conduct, he does not explain why that should mean it would not apply here. Indeed, the fact that a defendant's Indian status has nothing to do with his culpability makes it more likely, not less, that Congress intended to follow the general rule for statutory exceptions and make that status an affirmative defense.

## IV. ***Famous Smith* did not decide any question of burden.**

Both Hebert and Ruiz contend that *Famous Smith* resolved the question of burden against the government. Hebert Supp. Br. 8–10; Ruiz Supp. Br. 9–10. In that vein, Hebert contends (at 8–9 n.1) that *Famous Smith*'s description of the jury charge is confined to one paragraph and that the sentence starting the next paragraph ("That Gentry was a white man, and not an Indian was a fact which the government was bound to establish…") is not part of that description. But the structure of the disputed sentence mirrors the ones in the preceding paragraph, where, just like the disputed sentence, each of a series of four sentences describing the jury charge begins

with "That…," *Famous Smith*, 151 U.S. at 54–55, indicating continuity between the two parts. Moreover, the defendants' interpretation overlooks that the Court's placement of the paragraph break serves two purposes: (1) separating the portions of the charge that the defendant objected to from those that he did not; and (2) making it clear that "*this* charge" on which the Court was not "expressing an opinion" was the one on burden allocation, the one it had just recited. *Id*. at 55 (emphasis added).

Recall, as well, that the government had urged the Court to decide the question of burden. *Famous Smith*, 151 U.S. at 52–53.[4] It had, in fact, argued that the proviso rule applied, *id*. at 52, and that to hold otherwise would make it "almost impossible to administer justice in the Indian Territory," *id*. at 53. To accept the defendants' reading of *Famous Smith*, the Supreme Court would have to have dismissed these arguments without a word of analysis *and* nonsensically begun the opinion by stating that the case "raise[d] but a single question," a question it identified not as burden allocation but as whether the "undisputed testimony" showed the victim to have been an Indian. *Id.* at 53. This Court should instead take the Supreme Court at its word: the only issue decided in *Famous Smith* was the one to which the entire opinion is devoted—what the evidence showed about the victim's Indian status.[5]

[4] The prefatory material presenting this argument appears in the United States Reports and on Lexis but not in the Supreme Court reporter or Westlaw.

[5] *Famous Smith*'s unelaborated citation to *Marion Cnty. Comm'rs v. Clark*, 94 U.S. 278, 279 (1876), was not, as Hebert suggests (at 10), a covert resolution of the disputed burden. The case was cited for the proposition that when the evidence in a case is so

But even if the Court were to read *Famous Smith* to impose a burden on the government, Indian status would remain an affirmative defense for two reasons. First, *Famous Smith* may have been referring only to the "the ultimate burden of proof" (that is, the burden of persuasion), as the Fifth Circuit concluded in *United States v. Haggerty*, 997 F.3d 292, 302 (5th Cir. 2021). Under that view, either the proviso canon or peculiar-knowledge rule, or both, would then assign the burden of production to the defense. Second, even if *Famous Smith* is read to require the government to prove a *victim's* non-Indian status where the defendant is Indian, that would not mean that the government must prove a *defendant's* non-Indian status where the victim is Indian. While the best reading of Section 1152, in the government's view, places the three exceptions on equal footing (as provisos), it is also possible, as Ruiz acknowledges (at 10), that "each limitation could function differently." In that case, the Court should apply the general rule allocating the burden of proof to the party with special access to the facts. Gov. Supp. Br. 10–13.

## V. The Indian canon supports the government's reading.

Attempting to deploy the Indian canon in his favor, Ruiz (at 13–17) discounts every tribal interest except sovereignty. But the canon has never been so restricted. Under the canon, "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit," *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985)—and while sovereignty is undeniably a cognizable

---

one-sided as to permit only one permissible conclusion, the judge should issue a peremptory instruction.

benefit, it is not the only one.[6] And the exercise of another sovereign's authority in Indian Country is not necessarily to a tribe's detriment. In *Negonsott*, for instance, the Court recognized that, if the canon applied, the addition of state jurisdiction to the previously exclusive federal jurisdiction over major crimes committed by Indians in Indian Country might be considered a tribal *benefit*. 507 U.S. at 110. As discussed earlier, Gov. Supp. Br. 13, the Indian canon arises from the trust responsibility of the federal government towards the tribes, and that trust responsibility, "archaic" or not (Ruiz Supp. Br. 16), includes promoting the safety of Indian communities.[7]

If, however, the Indian canon were limited to sovereignty concerns, that would mean only that the canon is neutral here. This is because recognizing the intra-Indian provision as an affirmative defense does no violence to tribal sovereignty. While Ruiz posits (at 14) that this interpretation would unleash a rash of intra-Indian prosecutions, his fear is unfounded. A defendant has the best access to

---

[6] *See, e.g.*, *HRI, Inc. v. E.P.A.,* 198 F.3d 1224, 1245 (10th Cir. 2000) (noting that "the interests of Indian tribes" "includ[e] protecting tribal property and jurisdiction"); *United States v. Osage Wind*, *LLC*, 871 F.3d 1078, 1090 (10th Cir. 2017) (applying canon to construe regulation so as to "protect Indian mineral resources and 'maximize [Indians]' best economic interests'"); *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1057 (10th Cir. 2011) (applying canon to require federal government to pay disputed contract costs to tribes); *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1331–32 (10th Cir. 1982) (applying canon to construe regulation pertaining to publication requirements for oil and gas leases).

[7] *Castro-Huerta* does not suggest, as Ruiz implies (at 15–16), that tribes lack any interest in effective *federal* law enforcement in Indian Country. Nor does concurrent state jurisdiction negate that interest. As *Bryant* recognized, "Even when capable of exercising jurisdiction, however, States have not devoted their limited criminal justice resources to crimes committed in Indian country." 579 U.S. at 146.

evidence that he is Indian and every incentive to provide it—without implicating himself in the underlying crime. *United States v. Hebert*, 159 F.4th 777, 790 (10th Cir. 2025) (Hartz, J., concurring). An affirmative defense is strong protection against encroachment into traditionally tribal matters.

## VI. Defendants bear the burden of persuasion.

If a defendant's Indian status is an affirmative defense, Ruiz contends (at 17–19) that it should function like a statute of limitations, under which the defendant bears the burden of production and the government the burden of persuasion. But whatever the historical reasons for that allocation,[8] the Supreme Court has, in recent decades, reaffirmed the common-law rule that the proponent of an affirmative defense must carry the burdens of production *and* persuasion. *Dixon v. United States*, 548 U.S. 1, 8 (2006); *Smith v. United States*, 568 U.S. 106, 112 (2013). It has directed that when a statute is silent as to the burden of persuasion, Congress is presumed to have intended the common-law rule. *Dixon*, 548 U.S. at 13–14; *Smith*, 568 U.S. at 112. And it has specifically explained that this is how the proviso rule works. *Dixon*, 548 U.S. at 13; *Cunningham*, 604 U.S. at 701. Accordingly, because a defendant's non-Indian status is an affirmative defense in a case with an Indian victim, the entire burden of proving that status rests on the defendant. In addition, if the default

[8] As explained in *Patterson v. New York*, 432 U.S. 197, 202–03 (1977), *Davis v. United States*, 160 U.S. 469 (1895), led to the prosecution being assigned the burden of persuasion across a range of affirmative defenses. It is now clear, however, that *Davis* was not a constitutional ruling and that Congress is free to allocate the entire burden to a defendant on any affirmative defense that does not negate an element of the crime. *Id*. at 203.

common-law rule did not apply, that courts may require the government to prove statutes of limitations provides no basis for requiring it to prove a defendant's Indian status, as the former generally turns on facts within the government's possession, and the latter on facts within the defendant's unique control.

**VII. The rule of lenity has no role to play here.**

Contrary to Ruiz's claim (at 16–17), the rule of lenity does not command his interpretation. This rule "requires courts to interpret ambiguous statutes…in favor of criminal defendants." *United States v. Gay*, 240 F.3d 1222, 1232 (10th Cir. 2001). But the "simple existence of some statutory ambiguity" is "not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree." *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) at 138–39. The rule "comes into operation at the *end* of the process of construing what Congress has expressed[.]" *Chapman v. United States*, 500 U.S. 453, 463 (1991) (citation omitted, emphasis added). It "applies only if, after seizing everything from which aid can be derived," a court "can make no more than a guess as to what Congress intended," and is left with "grievous ambiguity or uncertainty in the statute," *Muscarello*, 524 U.S. at 138–39 (cleaned up).

Here, applying settled canons of construction to the text, structure, and context of Section 1152 shows that Congress intended for a defendant to bear the burden of proving his own Indian status. The rule of lenity therefore does not apply.

## VIII. <u>A new trial would not offend double jeopardy or due process.</u>

If the defendants desire new trials and establish their entitlement to them, neither double jeopardy nor due process principles would be offended. As to double jeopardy, the vacatur of the panel judgments means that neither guilty verdict has been vacated and neither defendant stands functionally acquitted (Hebert Supp. Br. 19; Ruiz Supp. Br. 20). In any event, review of a judgment of acquittal entered after a guilty verdict is permissible because reversal "would merely reinstate the jury's verdict[.]" *United States v. Wilson*, 420 U.S. 332, 344–45 (1975). Any new trials would be due to trial error, not insufficient evidence, which the Double Jeopardy Clause allows. *Burks v. United States*, 437 U.S. 1, 14 (1978).

Nor would retroactivity-related due process concerns bar retrial. The Due Process Clause prohibits applying a "novel" judicial construction of a criminal statute retroactively when "neither the statute nor any prior judicial decision has fairly disclosed [the conduct] to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). These conditions are not met where, as here, there is a circuit split on a question. *United States v. Rodgers*, 466 U.S. 475, 484 (1984). In addition, for all the reasons already argued, Section 1152's text, structure, and context have "disclosed" that a defendant's Indian status is an affirmative defense. Retrial is accordingly consistent with due process.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

RYAN ELLISON
First Assistant U.S. Attorney

CHRISTOPHER J. WILSON
U.S. Attorney
Eastern District of Oklahoma

*s/ C. Paige Messec*

C. PAIGE MESSEC
CAITLIN L. DILLON
Assistant U.S. Attorneys
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
paige.messec@usdoj.gov
caitlin.dillon@usdoj.gov

LINDA A. EPPERLEY
Assistant U.S. Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
(918) 684-5100
linda.epperley@usdoj.gov

## CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION

I HEREBY CERTIFY that the foregoing supplemental reply brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on July 28, 2026.

I ALSO CERTIFY that the attorneys for Defendant-Appellants Joel Ruiz (Violet N.D. Edelman) and Dennis Hebert (Jared T. Guemmer and Whitney R. Mauldin) are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

I FURTHER CERTIFY that this supplemental brief is double-spaced, uses a 13-point font, and does not exceed 15 pages.

*s/ C. Paige Messec*
C. PAIGE MESSEC
Assistant U.S. Attorney